## In re SIEVERS.

### (District Court, E. D. Missouri, E. D.　January 3, 1899.)

1. BANKRUPTCY—EFFECT OF BANKRUPTCY LAW ON COMMON-LAW ASSIGNMENTS.

   While the insolvency laws of the several states are superseded by the enactment of the national bankruptcy law, this is not the case with state statutes which merely regulate the administration of the trust created by an assignment for the benefit of creditors; and proceedings under such statutes, or under a common-law deed of assignment, are not void or voidable by reason of the existence merely of a bankruptcy law, or unless proceedings in bankruptcy are subsequently instituted against the assignor.

2. SAME—ACTS OF BANKRUPTCY—ASSIGNMENT FOR CREDITORS.

   Under Bankruptcy Act 1898, § 3, providing that it shall be an act of bankruptcy if a person shall have "made a general assignment for the benefit of his creditors," such an assignment is a wrongful act as to creditors, and voidable as such at their instance; and if proceedings in bankruptcy are subsequently instituted against the debtor, an adjudication therein will avoid the assignment, and subject the property assigned to the jurisdiction of the court of bankruptcy.

3. SAME—PROPERTY IN POSSESSION OF VOLUNTARY ASSIGNEE.

   Where a debtor has made an assignment of his property for the benefit of his creditors, and a petition in bankruptcy is filed against him alleging such assignment as an act of bankruptcy, and his assignee is in possession of the estate, has had the same appraised, and is about to make sale thereof, the court of bankruptcy has jurisdiction to enjoin such assignee from proceeding further with the administration of the estate, and to appoint the marshal to take charge of the property assigned, and to hold the same until the dismissal of the petition or the appointment of a trustee.

4. SAME—JURISDICTION OF COURTS OF BANKRUPTCY—SUITS BY TRUSTEES.

   District courts of the United States, as courts of bankruptcy, have jurisdiction to entertain and determine all suits brought by trustees in bankruptcy which are necessary for collecting, reducing to money, and distributing the estates of bankrupts, and for determining controversies in relation thereto, except such as are otherwise provided for in the bankruptcy act. Section 23 (b) of that act, providing that "suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt might have brought or prosecuted them if proceedings in bankruptcy had not been instituted," is a limitation upon the jurisdiction of the circuit courts of the United States, and does not affect the jurisdiction in bankruptcy conferred upon the district courts by other clauses of the act.

In Bankruptcy. On petition of creditors for the appointment of a receiver to take charge of assets of the alleged bankrupt, and to enjoin his assignee, under a previous general assignment, from proceeding with the administration of the estate.

Fisse & Kortjohn, for petitioners.
Chester H. Krum, for assignee.

ADAMS, District Judge. On the 19th day of December, 1898, the Adam Roth Grocery Company, and other creditors of Charles F. Sievers, whose claims exceed the sum of $500, filed their petition in this court to secure an adjudication of bankruptcy against him. The act of bankruptcy charged by them against the debtor is that he did, on the 6th day of December, 1898, make a general assignment for the benefit of his creditors, under the provisions of the laws of the state of Missouri, to Henry B. Davis, as assignee. On the 21st day of December, 1898, the debtor appeared, and filed an answer to the petition, in which he admitted the alleged act of bankruptcy, and confessed the prayer thereof. On the 23d day of December, 1898, the petitioning creditors filed a petition herein, setting forth the facts aforesaid, and also "that the assets of the said Charles F. Sievers consist of a certain piece of real estate situate on the southwest corner of Kings Highway and Old Manchester Road, in the city of St. Louis, together with a stock of groceries, wines, and liquors, horses and wagons, open accounts, and other similar personal property; and that according to the affidavit of said Charles F. Sievers, filed with the said deed of assignment, the value of all the said property is about $5,000. That the said Henry B. Davis, the assignee named in the said deed of assignment, has taken charge of the said assets, and is now in possession of the same, and that he has had appraisers appointed to appraise the said property, and, as your petitioners are informed, is proceeding to sell the said property. That a considerable portion of the property in the hands of said Henry B. Davis consists of perishable goods, and that the same should be sold as speedily as may be, under the direction of this court." And thereupon said petitioning creditors prayed the court to appoint a receiver to take charge of the assets so assigned, and that the said Davis be retained and enjoined from interfering with or disposing of the same, and from proceeding any further in the matter of said assignment made to him. On the filing of said petition, an order was duly made and served on the said Henry B. Davis, requiring him to appear in this court and show cause, on the 27th day of December, 1898, why the prayer of said petition should not be granted. On the return day of said order Davis appeared by his attorney, and for his return states, in substance and effect, that such assignment had been made to him, as alleged; that he had qualified as assignee, as required by the laws of the state of Missouri, and was proceeding to administer the trust imposed upon him by the deed; and claims a right so to do, notwithstanding the proceedings in bankruptcy heretofore detailed. The argument of his counsel in support of such return consists of two main propositions: First. That, although the making of a general assignment is made an act of bankruptcy, there is no provision of the bankrupt act annulling or avoiding such assignments, and no power conferred upon the court or any trustee to take possession of and administer the assets so assigned. Second. That any action challenging the respondent's right to hold the assigned property must be brought in the courts of the state which have exclusive jurisdiction thereof. The discussion on the

first of these questions took a wide range, comparing and distinguishing between deeds of assignment, as recognized in the state of Missouri and at common law, and insolvency proceedings, as recognized in Massachusetts and some other states. It is contended, on the one hand, that proceedings under the assignment law of Missouri, with its detailed provisions, giving the courts of the state jurisdiction over the administration of the estate assigned, so assimilate such assignments to insolvency proceedings that the power to make such assignments was superseded by the exercise of the constitutional grant of power to congress to "establish uniform laws on the subject of bankruptcy throughout the United States." Authorities supporting this view have been called to my attention. On the other hand, it is contended that there is a fundamental difference between the two methods of administering estates, and that laws permitting voluntary assignments by deed of the debtor, like those of Missouri, are not superseded by the exercise of such power conferred upon congress by the constitution, and my attention is called to certain cases decided by the supreme court of the United States to that effect. It is also argued, pro and con, that nothing is found in the act of July 1, 1898, entitled "An act to establish a uniform system of bankruptcy throughout the United States," pronouncing deeds of general assignment void, or giving to the trustee to be chosen by the creditors power to recover property so assigned by the debtor before the institution of proceedings in bankruptcy.

Concerning these different contentions, it appears to me that there is a substantial difference between a proceeding under a general insolvency statute and one under a statute permitting general assignments. The one administers upon the estate of an insolvent as a proceeding in the courts, derives its potency from the law, winds up the estate judicially, and discharges the debtor. Such is essentially a proceeding in bankruptcy, and such is undoubtedly superseded by the act of congress in question. This conclusion is supported, not only by ample authority, but by necessary negative implication from the last clause of the act of July 1, 1898, which provides that "proceedings commenced under state insolvent laws before the passage of this act shall not be affected by," etc. The other derives its potency, not from the law, but from the contract or deed of the debtor, is administered under and according to the provisions of the deed, supplemented only by salutary legislative safeguards, and does not result in a discharge of the debtor from his obligations. This method of proceeding is not superseded by the act of congress in question. Mayer v. Hellman, 91 U. S. 496; Boese v. King, 108 U. S. 379, 2 Sup. Ct. 765; Reed v. McIntyre, 98 U. S. 507. It results from these views that, while proceedings under the insolvency laws, as such, are now void whether proceedings in bankruptcy follow or not, proceedings under the general assignment laws of states, like Missouri, or under the common-law deed of assignment, are not void or voidable, unless proceedings in bankruptcy are subsequently instituted; and whether such is the case when an adjudication in bankruptcy follows is now to be considered. The fourth subdivision of section 3 of the recent bankruptcy act makes "a general assignment for the benefit of his creditors" an act of bankruptcy on the part of the debtor. The making of such assignment sub-

jects the debtor to the pains and penalties of the act, when invoked by his creditors within four months after it is made. In other words, as to his creditors it is a wrongful act, and, at their option, the debtor may, because of its commission, be adjudged a bankrupt, his property, under the general scheme of the bankrupt act, taken from him, and administered by the trustee who is chosen by them, for the equal benefit of the creditors. It is argued that such act of the debtor is wrongful only to the extent that it affords his creditors the occasion to secure an adjudication of bankruptcy against him, but is not wrongful to the extent of annulling or avoiding the act itself, so as to bring the debtor's property, wrongfully assigned, into a court of bankruptcy for administration under the general scheme there prescribed; in other words, that the creditors, by reason of the wrongful act of the debtor in making the general assignment, secure the body of the bankrupt, but not his estate, if it was all conveyed, as is usually the case, to the assignee. This reduces the effect of the proceedings by the creditors to simply this: putting into motion an expensive proceeding which can result in no benefit to themselves, but only in the discharge of their debtor from his just debts and obligations to them. A construction of the bankrupt act which produces this result seems to me to be unreasonable and irrational, and ought not to be adopted if a different intent can fairly be imputed to congress. I believe that a construction which gives to the act a rational and consistent interpretation can and should be evolved from the fact itself that the act of making a general assignment is a wrongful act done to the creditors, and, like any other wrongful act, can be avoided by the parties wronged and injured thereby. The act cannot, in my opinion, be wrongful, and at the same time available to the debtor, or his assignee holding necessarily with knowledge of the wrong committed, to justify them in retaining the fruits of the wrongful act. It follows that the adjudication of bankruptcy at the instance of one's creditors, on the ground that the debtor has made a general assignment for the benefit of his creditors, avoids the assignment itself, and subjects the property assigned to the jurisdiction of this court, to be administered here by the creditors under and pursuant to the provisions of the act of congress which they have invoked. I do not think that this construction is at variance with the decisions of the supreme court of the United States already cited in construing the provisions of the bankrupt act of 1867. Under that act, the making of a general assignment to one's creditors was not, of itself, an act of bankruptcy. It was construed by the courts to be an act done with intent "to defeat the operation" of the bankrupt law, and, therefore, because of such an intent, found as a fact to exist by necessary legal inference from the making of a general assignment, it was held to be an act of bankruptcy. In other words, under the act of 1867 the making of a general assignment for the benefit of creditors was not per se wrongful as to creditors, and therefore might be held to be unassailable by the creditors in proceedings in bankruptcy, when committed more than six months before such proceedings were taken against the debtor, without necessarily or fairly being so held within the meaning of the recent bankrupt act. In the absence of controlling authority, I am unwilling to impute to congress

91 F.—24

the irrational and senseless intent of placing the property of the bankrupt beyond the reach of the law by the very act which subjects him to the pains and penalties of the law, and am unwilling to say that creditors shall be reduced to the extremity of fancying that they have been invested with a valuable remedy which consists only in the privilege of conducting expensive litigation to secure a judicial decree that their debtor is absolved from any obligation to them.

The next question for consideration is whether this court has jurisdiction to determine the validity of the assignment in question, in the light of the provisions of section 23, subds. (a), (b), and (c), of the bankrupt act. The argument on this point is intended to raise, and does raise, the question whether the trustee chosen by the creditors in a bankruptcy proceeding may ever resort to the district court of the United States, as a court of bankruptcy, for the assertion of his right to assets of the estate against an adverse claimant, or whether he is compelled to resort to state courts for such a remedy. The particular question now before the court might be disposed of on the ground that it involves proceedings necessary for the preservation of assets of the bankrupt, specifically authorized by the provisions of the bankrupt act to be taken before the election of a trustee, but I deem it timely and proper, now that this question is for the first time mooted, to consider and decide the main question argued. By clear provisions of the bankrupt act, title to all the assets and property, including rights of action of the bankrupt available to his creditors, is vested in the trustee (an office created by the act itself), for administration under and subject to its provisions. Section 70. The district court, as a court of bankruptcy specially created by the act, is invested, within its territorial limits as now established, with such jurisdiction at law and in equity as will enable it to exercise original jurisdiction in bankruptcy proceedings, among other things:

(1) "To cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, except as herein otherwise provided." (2) "To make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act." (3) "To appoint receivers, or the marshals, upon application of the parties in interest in case the courts shall find it absolutely necessary for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified." Section 2, subds. 7, 15, and 3.

It is finally, in that section, after conferring the foregoing powers, and many others therein enumerated, provided as follows:

"Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated."

In addition to this, it must be observed that the act itself is an administrative measure, enacted under a constitutional grant of power for the enforcing and collecting of the assets of an insolvent debtor and distributing them pro rata among his creditors; and the district court of the United States, as a court of bankruptcy, is the jurisdiction created for its administration. From this general consideration of the purposes of the act, and the jurisdiction generally and specifically conferred upon this court as a court of bankruptcy, as already pointed out,

it appears that congress has directly, in terms, and by necessary implication, conferred the requisite jurisdiction upon this court to entertain and determine any suits, at the instance of the trustee or otherwise, necessary for collecting, reducing to money, and distributing the estates of bankrupts, and for determining controversies in relation thereto, except such as are in this act otherwise provided for.

It now becomes necessary to consider this last-mentioned exception, and to ascertain what controversies, if any, are therein referred to "as otherwise provided for." It seems to me that, when full and comprehensive jurisdiction is first clearly conferred upon a court to do certain acts for certain purposes, any of such acts so generally comprehended cannot be withdrawn from such jurisdiction, under the exception referred to, unless it comes clearly and necessarily within the terms of the exception, and that the exception ought not to be so construed as to absolutely nullify the rule. There are obviously certain actions which a trustee may be required to bring in order to fully collect the assets of a bankrupt which cannot be instituted in the particular district court having general charge of the proceedings, such as those in which the debtor to the bankrupt, or the adverse claimant to some right claimed by the trustee, resides without the territorial limits of the court. There are other suits which may, at the time of the adjudication of the bankruptcy, be pending in a state court, in which the trustee may be required to enter his appearance to prosecute or defend, under the provisions of section 11, subds. (b) and (c). So, also, differences between the trustee and adverse claimants may be submitted to arbitration, in which case the award of the arbitrators determines the controversy. Section 26. Suits and controversies like these are clearly within the exception referred to, and afford scope for its application. But it is claimed, and the serious contention is, that section 23, subd. (b), creates an exception of such magnitude as deprives this court of jurisdiction to hear and determine any suit at the instance of a trustee, for any purpose connected with or necessary to the collecting of assets of the bankrupt's estate, or determining controversies in relation thereto. This view of the law, if correct, practically emasculates the entire scheme, renders nugatory the general and comprehensive jurisdiction apparently conferred by the preceding sections, and, it must be conceded, ought not to prevail, unless the intent of congress to that effect is perfectly clear. Subdivision (b) referred to reads as follows:

"Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt whose estate is being administered by such trustee might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by the consent of the proposed defendant."

It is contended that, because the district courts of the United States have never afforded, and do not now afford, a jurisdiction available to a creditor to collect his debts, the trustee under the bankrupt act, by virtue of the terms employed, is precluded from resorting to this court, and must institute all suits for the recovery of assets and assertion of the rights of the bankrupt in the courts only in which the bankrupt could have so done if there were no proceedings in bankruptcy, and, therefore, of necessity in the courts of the state, or in such circuit court of the United States to which the bankrupt, in case of diverse

citizenship between him and his debtor, could have resorted. To arrive at the true interpretation of this subdivision (b), attention should be given to the entire section, with a view of ascertaining if other provisions throw light upon it. Subdivision (a) is as follows:

"(a) The United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy between trustees, as such, and adverse claimants, concerning the property acquired or claimed by the trustee, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had between the bankrupts and such adverse claimants."

Subdivision (c) is as follows:

"(c) The United States circuit courts shall have concurrent jurisdiction with the courts of bankruptcy within their respective territorial limits of the offenses enumerated in this act."

Between these two subdivisions is found the one under consideration, already set out. Now, what do they all mean? It must be borne in mind that, at the time of the passage of the recent bankrupt act, the judiciary act of March 3, 1887, as amended by the act of August 13, 1888, was in force. These acts conferred jurisdiction upon the circuit courts of the United States in "cases arising under the constitution or laws of the United States," or, as commonly expressed by the profession, in cases involving a "federal question." According to well-settled authority, to which reference need not here be made, a federal question arises in any case where the plaintiff is a corporation created by an act of congress, or where the plaintiff holds an office, like that of a receiver of a national bank, created by an act of congress. This is because the plaintiff derives his office, and, therefore, his title to property, from a law of the United States. In the light of the interpretation given to the acts of congress of 1887 and 1888, concerning what is a federal question, as already stated, it seems to me that the legislative intent involved in section 23 of the recent bankrupt act is clear. A trustee appointed under the bankrupt act, although an officer created by an act of congress, is not, by reason of that fact alone, as in the case of a receiver appointed to wind up the affairs of a national bank, entitled to resort to the circuit courts of the United States for the enforcement of his rights as such officer, but must stand in the shoes of the bankrupt himself with respect to instituting suits in the circuit courts of the United States. In other words, section 23, when properly construed, seems to me to mean that so much of the acts of March 3, 1887, and August 13, 1888, as confers jurisdiction upon the circuit courts of the United States of a suit in favor of an officer holding title under a law of the United States, is inoperative with respect to the officer known as a trustee under the bankrupt act. Subdivision (a) is in the nature of a prohibition addressed to the United States circuit courts from exercising jurisdiction in any case between the trustee and an adverse claimant, unless the bankrupt himself could have resorted to the circuit court for the assertion of such claim against the adverse claimant. Subdivision (b) reinforces the prohibition of subdivision (a), but in this instance the prohibition is addressed to the trustee instead of the circuit courts, as found in subdivision (a). But both subdivisions, when read together, in my opinion,

relate to the same subject-matter, and that is to the jurisdiction of the United States circuit courts, and to that alone. They limit the jurisdiction of such courts to hear and determine such actions only, between a trustee and an adverse claimant, as the bankrupt himself might have prosecuted against such claimants in those courts because of diverse citizenship, and require the trustee, when asserting a claim through the right or title of the bankrupt, to resort to a state court, unless the bankrupt might have resorted to a federal court. This section, taken as a whole, appears to me to be only a curtailment of the jurisdiction of the circuit courts, and not at all applicable to district courts or their jurisdictions, as already in the act conferred upon them. This is the more manifest when it is considered that district courts, as such, are not mentioned in the section, while the circuit courts are in terms alone referred to in subdivisions (a) and (c). Subdivision (b) is found located immediately between subdivisions (a) and (c), and in the same act conferring a broad and comprehensive jurisdiction upon the district courts as courts of bankruptcy. Now applying two familiar rules of construction of statutes, one of which is condensed in the maxim, "Noscitur a sociis," and the other requiring the courts to so construe any act as to give force and effect to each and all of its parts, I am disposed to hold that subdivision (b) relates to the same subject-matter as that found in the immediately preceding and following subdivisions, namely, to the jurisdiction of the circuit courts of the United States, and particularly to the matter of providing a remedy which is there taken from such courts, and that this subdivision finds full scope for application in such cases in which the district court in charge of the given cause, because of the fact that the debtor or adverse claimant resides without the territorial limits of its jurisdiction, cannot afford a remedy, and in which the circuit courts might have had jurisdiction except for the provisions of section 23. In such cases the state courts have exclusive jurisdiction, unless there is such diversity of citizenship as permits recourse to the circuit courts. It may be that a trustee, by virtue of subdivision (b) under consideration, may at his election resort to any state court as a court of competent jurisdiction in any case for a remedy, but as to this I am not called upon to express an opinion. I am, however, clearly of the opinion that subdivision (b) does not exclude a resort to this court in any proceeding by the trustee arising within its territorial jurisdiction. Coming now to the question in judgment, it is my opinion that the petitioning creditors in this case are entitled to the relief prayed for by them, and accordingly the respondent Henry B. Davis will be enjoined from proceeding further with the administration of the estate of the bankrupt under the general assignment heretofore made to him, and the United States marshal will be appointed to take charge of the property assigned to the respondent, and to hold the same until either the petition in bankruptcy in this case is dismissed, or the trustee hereafter to be appointed is qualified.