NORCROSS v. NATHAN et al.

(District Court, D. Nevada. January 23, 1900.)

No. 906.

1. BANKRUPTCY—CONSTRUCTION OF STATUTE.
   The national bankruptcy act establishes a uniform system of bankruptcy, and regulates, in all their details, the relations, rights, and duties of the debtor and creditor. It should be interpreted reasonably, and according to the fair import of its terms, with a view to effect its objects and to promote justice.

2. SAME—JURISDICTION—SUITS BY TRUSTEES.
   A district court of the United States, as a court of bankruptcy, has jurisdiction of a suit by a trustee in bankruptcy against the bankrupt and another to set aside an alleged fraudulent transfer or conveyance of property by the bankrupt to his co-defendant,·and to recover the property or its value, although the parties are all citizens of the same state.

3. SAME—JURISDICTION OF STATE COURTS.
   State courts have jurisdiction, concurrent with that of the courts of bankruptcy, of actions by trustees in bankruptcy to set aside alleged fraudulent transfers or conveyances of property made by the bankrupts upon whose estates they are appointed to administer.

4. SAME—REMEDIES OF TRUSTEE.
   A trustee in bankruptcy stands in the place of the creditors of the bankrupt, and has the same rights, and may pursue the same remedies, in their behalf, as they would have been entitled to if there had been no adjudication in bankruptcy. In a suit against the bankrupt and his transferees to set aside alleged fraudulent conveyances of property, the trustee has the right to include all such matters and causes of action as might have been included by the creditors in a creditors' bill against the defendants.

5. SAME—TRUSTEE'S COMPLAINT—MULTIFARIOUSNESS.
   The complaint in an action by a trustee in bankruptcy against the bankrupt and two other defendants, alleging that one of such defendants had obtained possession of property of the bankrupt under a fraudulent chattel mortgage, and that the other claimed part of the property under a pretended and illegal purchase from his co-defendant, the mortgagee, and asking that the mortgage and the sale be declared void and canceled, and that the vendee of the property be required to surrender it to the plaintiff, or account to him for its value, is not demurrable for multifariousness, since the acts charged against the defendants, though distinct, constitute a connected series of acts all having relation to a common fraudulent purpose, in which all the defendants had a common interest.

In Bankruptcy. On demurrer to complaint.

Torreyson & Summerfield (Joseph Kirk, of counsel), for plaintiff.
Thomas Wren, for defendants.

HAWLEY, District Judge. This action is instituted by the plaintiff, as trustee of M. Nathan, a bankrupt, to recover certain personal property from the defendant Hausmann, alleged to have been fraudulently obtained by him for the purpose of defrauding the creditors of Nathan; and for the purpose of setting aside a mortgage fraudulently given to defendant L. J. Cohn by M. Nathan. The facts with reference to these transactions, as alleged in the complaint, are substantially the same as were presented to this court in the petition for an injunction against L. J. Cohn. In re Nathan (D. C.) 92 Fed. 590. The prayer of the complaint is as follows:

"That the said promissory note and chattel mortgage from defendant M. Nathan to defendant L. J. Cohn be adjudged and decreed as against plaintiff to be fraudulent, void, and without effect, and that the same be canceled; that the seizure and possession of the personal property described in the said chattel mortgage by defendant L. J. Cohn be adjudged and decreed to have been fraudulent, without authority of law, and without effect; that the said pretended sale and delivery from defendant L. J. Cohn to defendant Joseph Hausmann be annulled, and set aside; that defendant Joseph Hausmann be required by decree of this honorable court to immediately deliver to plaintiff all of the said personal property detained by him as aforesaid, or that, in the event that said sale thereof from defendant L. J. Cohn to defendant Joseph Hausmann should be held to be valid; that the said defendant Joseph Hausmann be required to pay to plaintiff the sum of $865, remaining unpaid therefor; that plaintiff have such other or further relief as may seem meet and equitable in the premises; that he have judgment against defendant Joseph Hausmann for $500 as damages, and that he have judgment against defendants for his costs of suit herein."

To this complaint the defendants have interposed a demurrer upon the following grounds, viz.:

"(1) That the court has no jurisdiction to entertain or try said causes of action, the plaintiffs and defendants each and all being residents and citizens of the same state, to wit, of the state of Nevada. (2) That there is a misjoinder of parties defendant in said cause, Joseph Hausmann being improperly joined as a defendant with L. J. Cohn and M. Nathan. (3) That there is a misjoinder of causes of action, a cause of action in favor of the plaintiff and Joseph Hausmann being joined with a cause of action against L. J. Cohn and M. Nathan in favor of the plaintiff; and a cause of action to declare a mortgage and promissory note made by M. Nathan to L. J. Cohn to be void, fraudulent, and without effect, and that the same be canceled, with a cause of action in favor of plaintiff and against defendant Joseph Hausmann for the return or delivery of goods, wares, and merchandise, together with damages for the detention thereof."

1. The question as to the jurisdiction of this court to entertain this action depends to some extent upon the construction to be given to section 23b of the bankruptcy act of 1898, relating to the jurisdiction of the United States and state courts. The entire section reads as follows:

"Sec. 23 (a) The United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted

and such controversies had been between the bankrupts and such adverse claimants. (b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant. (c) The United States circuit courts shall have concurrent jurisdiction with the courts of bankruptcy, within their respective territorial limits, of the offenses enu-. merated in this act." 30 Stat. 552.

With reference to this question there have been several decisions in the different district courts of the United States, and a decided conflict of opinion has been expressed by the various judges in regard thereto. Some of the judges have held that the district courts have no jurisdiction of an action like the present (Burnett v. Mercantile Co., 91 Fed. 365; Mitchell v. McClure, Id. 621; Heath v. Shaffer, 93 Fed. 647, 651; Hicks v. Knost (D. C.) 94 Fed. 625; Perkins v. McCauley (D. C.) 98 Fed. 286); while others have held directly to the contrary (In re Sievers, 91 Fed. 366, 370; Carter v. Hobbs, 92 Fed. 594, 598; In re Newberry, 97 Fed. 24; Robinson v. White, Id. 33; Murray v. Beal, Id. 567). See, also, Loveland, Bankr. pp. 67–73, § 20; Id. pp. 581, 582, § 263. The reasoning of the judges proceeds in each line of cases upon somewhat different grounds. As no authoritative decision has been rendered by the circuit court of appeals or by the supreme court of the United States, the various district judges will continually be called upon to wrestle with the disputed question, and pass judgment thereon in accordance with their own individual views. It is doubtless true that the bankruptcy act is, in some respects, imperfect. Some of its provisions are not entirely clear, and others are difficult of a construction which would be in entire harmony with other sections of the act. Its general tendency in this respect is to bring trouble to the courts, and create opposition to the act, which ought not, and otherwise would not, exist. But, whatever its defects may be, the act as a whole was intended to be beneficial, fair, and just to creditors and debtors alike. It is founded in the right spirit, based upon equitable principles, and, if the machinery provided for carrying it into effect is obscure or uncertain, it ought not to be set in motion in such a manner as to make it a snare and delusion, instead of maintaining its justice and upholding its beneficial purposes. In order to determine the true interpretation of the provisions of the bankruptcy act, courts ought to look beyond the pale of the words used in any particular section (which are of themselves doubtful, and to some extent uncertain), and examine the policy of the entire act, its character, object, and purpose, in order to ascertain whether or not there are any other sections which have any tendency to shed light upon what was meant or intended by congress by the use of the language under the particular section or subdivision thereof under consideration. The national bankruptcy act establishes a uniform system, and regulates in all their details the relations, rights, and duties of the debtor and creditor. It should be interpreted reasonably and according to a fair import of its terms, with a view to effect its objects and to promote justice. Blake, Moffitt & Towne v. Francis-Valentine Co. (D. C.) 89 Fed. 691, 693, and authorities there cited. In Re Nathan (D. C.) 92 Fed. 590, 593, this court said that:

"In the disposition of property among creditors equality is equity. It is the genius and purpose of the act of 1898 to secure this result as far as possible from the moment its aid is invoked, whether by the debtor or by his creditors. Its exercise is vital to the ends of justice, and is necessary in order to enable the courts to enforce and make effective the various provisions of the act. The policy of the bankrupt act is to secure an equal distribution of the assets of the bankrupt among all his creditors, and a court of bankruptcy in which the bankrupt proceedings are pending, in order to preserve the property and protect the rights of all the creditors, has the unquestioned jurisdiction and power to enjoin any disposition thereof which would be in violation of the spirit, intent, and purpose of the act."

See, also, authorities there cited. And in the same case the court further said that the filing of the petition by the creditors was, as is said in Bank v. Sherman, 101 U. S. 403, 406, 25 L. Ed. 866, "a caveat to all the world. It was, in effect, an attachment and injunction. Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. * * * Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril." See, also, authorities there cited. The act, among other things, provides, in section 2, for courts of bankruptcy, and invests them with jurisdiction, and declares that the district courts of the United States "are hereby made courts of bankruptcy, and are hereby invested within their respective territorial limits * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation in chambers and during their respective terms"; to bring in and substitute persons, whenever necessary for the complete determination of any matter in controversy; to "appoint receivers * * * for the preservation of estates, to take charge of the property of bankrupts" (subdivision 3); to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided" (subdivision 7); to "make such orders, issue such process, and enter such judgments in addition to those specially provided for as may be necessary for the enforcement of the provisions of this act" (subdivision 15); and the section closes with the following provision: "Nothing in this section contained shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated." By section 70 the trustee is, upon his appointment and qualification, vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, as to property transferred by the bankrupt in fraud of his creditors. In the light of the general object of the act and of the provisions above cited, it seems to me clear that the jurisdiction of this court should be upheld and maintained, even if it should be conceded that section 23b, standing alone, might be susceptible of a different construction. This court certainly ought not to be deprived of jurisdiction in the premises unless the act in clear and direct language vests it elsewhere.

On the other hand, conceding, as we must, on account of the conflicting opinions, that section 23b is susceptible of two different interpretations, it should be construed, if possible, so as to harmonize,

in spirit as well as in letter, with the other provisions of the act. In my opinion, the language of section 23b, when considered in con- nection with the other provisions of the act, does not deprive this court of jurisdiction of a case like the present. It certainly does not do so in direct or clear terms. Did congress mean, when it passed the act, that the district courts, as courts of bankruptcy,— which are invested in direct terms with the absolute power to cause the estates of bankrupts to be collected, reduced to money, and dis- tributed, and determine controversies in relation thereto,—should have no jurisdiction over a suit brought by the trustee of the bank- rupt against an adverse claimant to the property which it is claimed belongs to the bankrupt estate? Did congress mean that the dis- trict court, as a court of bankruptcy,—which is by the act invested with the jurisdiction, power, and authority to issue an injunction to restrain adverse claimants from selling or disposing of the prop- erty claimed by creditors to belong to the bankrupt estate,—should not have any jurisdiction, power, or authority to hear or determine the question whether the adverse claimant obtained the property, by the connivance and fraud of the bankrupt, for the purpose of de- frauding the creditors of the bankrupt, in a suit brought by the trustee against the adverse claimant, to determine that question? Is there such a glaring and manifest inconsistency, either in the provisions cited or in the construction of the act as an entirety, which necessarily leads to such incongruous or absurd results? The language of the court of appeals in Davis v. Bohle, 34 C. C. A. 372, 375, 92 Fed. 325, 328, in determining the effect of an assignment and the right of the court of bankruptcy to issue an injunction to enjoin the assignee, is pertinent to the question under consideration as to the construction which should be given to the act. The court, among other things, said:

"If it be held that the assignee named in a deed of general assignment is entitled to hold the property committed to his charge, and administer the same pursuant to local laws, although the assignor is adjudicated a bankrupt, then the singular, not to say absurd, result will follow that the creditors of the assignor will be deprived of the benefit of all the provisions of the national bankrupt act which relate to the disposition, control, and manage- ment of bankrupt estates. In other words, a law which was intended, in part, at least, for the benefit of creditors, will be rendered practically valueless as to them in those cases where the debtor makes a general assignment. It is one of the fundamental rules for the construction of statutes that they should receive a sensible interpretation, and that a construction should always be avoided which, in its practical operation, tends to defeat any of the pur- poses of the statute, or which leads to an absurd consequence. Exceptions may be presumed, or words omitted or supplied, when it is necessary to accomplish the obvious intent of the lawmaker, and to prevent injustice or oppression. U. S. v. Kirby, 7 Wall. 482, 19 L. Ed. 278; Heydenfeldt v. Min- ing Co., 93 U. S. 634, 23 L. Ed. 995; Church of Holy Trinity v. U. S., 143 U. S. 457, 460, 461, 12 Sup. Ct. 511, 36 L. Ed. 226; Scott v. Latimer, 33 C. C. A. 1, 89 Fed. 843; Thurber v. Miller, 32 U. S. App. 209, 14 C. C. A. 432, 67 Fed. 371. We feel confident that congress did not intend by the recent bankrupt act to commit the administration of an insolvent estate to an assignee chosen by the bankrupt, who should be free from the control of the bank- ruptcy court having jurisdiction over the person of the bankrupt, or to deprive the creditors of a bankrupt in any case of those rights and remedies that have been carefully provided by congress to secure a faithful, economical, and uniform management of bankrupt estates. It follows, therefore, that a con-

struction of the act which would lead to the aforesaid results should be rejected. It is proper to add that the question at issue in this case, besides having been carefully considered by the trial court (In re Sievers [D. C.] 91 Fed. 366), has been recently considered, in an elaborate opinion, by Judge Brown, of the Southern district of New York, in Re Gutwillig (D. C.) 90 Fed. 475, 480. In the latter case it was held (and we find no occasion to question the soundness of that view) that the provisions of section 70 of the recent bankrupt act are in themselves sufficient to vest the trustee in bankruptcy, when appointed, with the title to property of the bankrupt held by an assignee under a general assignment for the benefit of creditors, executed, as in this case, prior to proceedings in bankruptcy, if an adjudication subsequently follows within the statutory period of four months. That section declares, in substance, that the trustee shall be vested by operation of law with the title of the bankrupt to 'property transferred by him in fraud of his creditors'; and, as Judge Brown well observes, the fraud therein referred to is not limited to frauds arising, as at common law, from the intent of the bankrupt, but comprehends as well those constructive frauds which consist in making conveyances like a general assignment, which, if suffered to stand, will impair substantial rights conferred on creditors by the bankrupt law,—such as the right to have the estate administered by a trustee of the creditors' own choice, and under and subject to the provisions of the act and the control of the proper bankruptcy court."

Section 23 of the bankruptcy act in its entirety deals with the jurisdiction of the United States circuit courts. It is reasonable to assume that it was inserted for the purpose of avoiding, instead of creating, doubt and uncertainty that might otherwise exist if no limitation had been made as to their general jurisdiction. Subdivision "a" makes it clear that the circuit court is prohibited from entertaining jurisdiction of suits between the trustee and an adverse claimant to property which the creditors claim belongs to the estate of the bankrupt, unless the bankrupt himself could have resorted to the circuit court for the assertion of such claim against the adverse claimant. Then comes subdivision "b," which simply prohibits the trustee from bringing such suits in the circuit court.

In Re Sievers, supra, Judge Adams, after citing certain provisions of the act, said:

"In addition to this, it must be observed that the act itself is an administrative measure, enacted under a constitutional grant of power for the enforcing and collecting of the assets of an insolvent debtor and distributing them pro rata among his creditors; and the district court of the United States, as a court of bankruptcy, is the jurisdiction created for its administration. From this general consideration of the purposes of the act, and the jurisdiction generally and specifically conferred upon this court as a court of bankruptcy, as already pointed out, it appears that congress has directly, in terms, and by necessary implication conferred the requisite jurisdiction upon this court to entertain and determine any suits, at the instance of the trustee or otherwise, necessary for collecting, reducing to money, and distributing the estates of bankrupts, and for determining controversies in relation thereto, except such as are in this act otherwise provided for."

—And then discusses the meaning of the words "otherwise provided for," and expresses the opinion that, when full and comprehensive jurisdiction is first clearly conferred upon a court to do certain acts for certain purposes, any of such acts so generally comprehended cannot be withdrawn from such jurisdiction, under the exception referred to, unless it comes clearly and necessarily within the terms of the exception, and that the exception ought not to be so con-

strued as to absolutely nullify the rule; and then points out numerous cases where the trustee, in the discharge of his duties, might be required to bring suits in the state courts, and proceeds:

"But it is claimed, and the serious contention is, that section 23, subd. 'b,' creates an exception of such magnitude as deprives this court of jurisdiction to hear and determine any suit at the instance of a trustee, for any purpose connected with or necessary to the collecting of assets of the bankrupt's estate, or determining controversies in relation thereto. This view of the law, if correct, practically emasculates the entire scheme, renders nugatory the general and comprehensive jurisdiction apparently conferred by the preceding sections, and, it must be conceded, ought not to prevail, unless the intent of congress to that effect is perfectly clear. * * * It is contended that, because the district courts of the United States have never afforded, and do not now afford, a jurisdiction available to a creditor to collect his debts, the trustee under the bankrupt act, by virtue of the terms employed, is precluded from resorting to this court, and must institute all suits for the recovery of assets and assertion of the rights of the bankrupt in the courts only in which the bankrupt could have so done if there were no proceedings in bankruptcy, and, therefore, of necessity in the courts of the state, or in such circuit court of the United States to which the bankrupt, in case of diverse citizenship between him and the debtor, could have resorted. To arrive at the true interpretation of this subdivision 'b,' attention should be given to the entire section, with a view of ascertaining if other provisions throw light upon it."

—And arrived at the conclusion that section 23, taken as a whole, amounts only to a curtailment of the jurisdiction of the circuit courts, and is not applicable to district courts or their jurisdiction, as is elsewhere in the act conferred upon them, and proceeds to give good and sufficient reasons in support of this conclusion.

In Carter v. Hobbs, Judge Baker said:

"The language of clause 'b' must be strictly construed to avoid repugnancy between it and a plenary grant of jurisdiction conferred by section 2. The application of these settled rules of construction leaves no doubt that the clause of section 23 under consideration does not devest courts of bankruptcy of jurisdiction over suits brought by the trustee to set aside fraudulent transfers of the bankrupt. The clause in question requires suits which the bankrupt might have brought or prosecuted to be brought in the courts in which the bankrupt must have brought them if bankruptcy had not supervened. It seems to me to be clear that, where the trustee brings a suit to enforce a right of action which never existed in the bankrupt, the district court has ample jurisdiction to maintain it. The trustee's right of action in such a case is not a derivative one, growing out of a prior right possessed by the bankrupt, but his right is original, created by law, and in the enforcement of it he represents the creditors, and his suit is, in effect, the exact equivalent of a creditors' bill to reach property fraudulently transferred. Such a suit could never have been brought or prosecuted by the bankrupt against himself and his fraudulent transferees. No state court could entertain jurisdiction over such a suit when attempted to be brought or prosecuted by the bankrupt, and no such construction of clause 'b' is admissible. When suits which the bankrupt could have brought or prosecuted in the courts of the state are spoken of, evidently real suits upon existing causes of action belonging to the bankrupt are meant, and not suits for the pretended enforcement of causes of action, which never existed in favor of the bankrupt."

The conclusion reached is wholly independent of the question whether or not the state courts have jurisdiction over a cause of action like the present. It must be conceded that the trustee might bring a suit in the state court, and, where the parties or property involved are situate in a county remote from the place where this court is held, it would, perhaps, be advisable for him to do so in order

to save expense or great inconvenience to the respective parties. All that is decided is that the state courts do not have the exclusive jurisdiction, and that this court, as a court of bankruptcy, has concurrent jurisdiction with the state courts to hear and determine controversies of this character. See Robinson v. White, supra. The first ground of the demurrer cannot be sustained.

2. The other points of the demurrer, to the effect that the complaint is multifarious, both as to parties defendant and as to the objects to be reached, are not, in my opinion, well taken. This conclusion, it seems to me, is virtually a necessary sequence from the views expressed in regard to the various sections of the act heretofore cited. See, also, section 70e and section 47a, cl. 2. In the discussion of these questions, as well as of the question of jurisdiction, a broad, liberal, and comprehensive view should be taken of the general purpose of the bankruptcy act, its intended scope and effect, the remedies provided for, the delays and expense to be avoided, and the objects sought to be accomplished thereby. It must be remembered that whatever jurisdiction this court has in this case is derived exclusively from the provisions of the act itself, and that the distinction which exists between actions at law and suits in equity under the general provisions of the acts of congress defining the jurisdiction of the United States courts has no application to the points raised by the demurrer. One of the most prominent features to be found in the bankruptcy act is that which requires all the proceedings to be instituted and determined at the least possible expense. In that respect it is designed and intended to be beneficial to the bankrupt, as well as to the creditors, and it is difficult to see why either of the parties should insist upon having, or being allowed, a divided jurisdiction in actions at law and suits in equity, which, if granted, would simply result in a multiplicity of causes of action, and create an unnecessary expense. The trustee in bankruptcy stands in the place of the creditors of the bankrupt, and has the same rights and may pursue the same remedies in their behalf as they could or would have been entitled to if there had been no adjudication in bankruptcy. He has, in my opinion, the right to embrace in one suit all such matters and causes of action as might be included by the creditors in a creditors' bill against the defendants. The real matter here involved is in the fraud alleged in regard to the disposition of the property of M. Nathan, the bankrupt. The fraud charged is, in brief, that the defendant Cohn obtained certain personal property belonging to the bankrupt in fraud of the rights of the creditors under the provisions of the bankruptcy act, and that Hausmann, by a pretended, fictitious, and illegal purchase, acquired possession of a portion of the personal property in fraud of their rights, which he refuses to surrender to the trustee, or to pay its value. Although the defendants are charged with different acts of fraud, affecting different portions of the estate of the bankrupt, it appears on the face of the complaint that their acts are charged to have been committed for a common fraudulent purpose; and the object of this suit is simply to wipe out the fraud, clear the title, and recover the property, or its value, for the cred-

itors. The ground or cause of action is the obstruction thrown in the way of recovery by the defendants, and the object is to remove the impediment. The fraud alleged relates to the same general subject. Each defendant has a common interest, centering in the real point in issue. The object of the suit is, therefore, single; but the defendants have, or claim to have, separate and distinct interests in the property, and to be interested in independent and separate questions, which are, however, all connected with and arising out of the single object of the suit. If equitable principles are to prevail, it is evident that complainant may bring such different persons before the court as defendants in order that the whole object of the bill may be obtained in one suit, and further litigation concerning the same issues be prevented. If the trustee should be required to sue each defendant separately, it would bring the same question of fraud into discussion in each suit, and thereby reduce the funds of the estate, and be productive in its results of all the mischief and oppression attending a multiplicity of suits, which should always, if possible, be avoided. The averments in the complaint in relation to the fraud show that the defendants performed different parts in the same drama; but it is one play,—one entire performance,— marked by different schemes or transactions towards a common end. The several matters charged in the complaint are not so distinct and unconnected as to render the joining of them in the complaint multifarious. The law in relation to a creditors' bill is well settled. As was held by Chancellor Kent in Brinkerhoff v. Brown, 6 Johns. Ch. 139, a bill may be filed against several persons relative to matters of the same nature, forming a connected series of acts, all tending to defraud and injure the plaintiffs, and in which all the defendants were more or less concerned, though not jointly, in each act. The general principles herein announced are supported by the following authorities: Pullman v. Stebbins (C. C.) 51 Fed. 10, 15; Carter v. Hobbs (D. C.) 92 Fed. 594, 596; Spaulding v. McGovern, 10 N. B. R. 188, Fed. Cas. No. 13,217; Fellows v. Fellows, 4 Cow. 682, 697, 702; Boyd v. Hoyt, 5 Paige, Ch. 65, 71, 77; Way v. Bragaw, 16 N. J. Eq. 213, 215; Hamlin v. Wright, 23 Wis. 491; Chase v. Searles, 45 N. H. 511, 519; Reed v. Stryker, 12 Abb. Prac. 47; 5 Enc. Pl. & Prac. 546, 558, and authorities there cited. Independent of these general principles, there is another reason why the points raised by the demurrer should not be sustained. It is evident that the complaint states a good cause of action against the defendant Hausmann, and the other matters alleged in the complaint may be treated as the mere inducement to the bringing of the action by setting forth a full and complete statement of all the fraudulent acts of the bankrupt, Nathan, and of the defendant Cohn, which, if proven to be true as alleged, would establish a clear case in favor of the trustee against the defendant Hausmann. If it should, therefore, be conceded that the prayer of the complaint is, as claimed by defendants' counsel, too broad,—if it asks for greater relief than upon the trial of the case the court thinks the trustee is entitled to,—it will not be granted. The demurrer is overruled.