(October 17, 1914.)

## CAPITAL LUMBER CO., a Corporation, Respondent, v. HEZEKIAH SAUNDERS et al., Appellants.

[143 Pac. 1178.]

INSOLVENT DEBTOR—ATTACHING CREDITORS—ASSIGNMENTS—DEEDS HELD MORTGAGES — INSOLVENCY PROCEEDINGS — NATIONAL BANKRUPTCY LAW—COMMON-LAW ASSIGNMENTS—FRAUD.

1. S., an insolvent debtor, executed and delivered several warranty deeds in form to a corporation to which he was largely indebted at the time to secure the debt, and certain attaching creditors of S. appeared in an action wherein said corporation prayed to have said deeds declared mortgages and foreclosed, and alleged the deeds to be fraudulent as to them, and asked that they be set aside; *held,* under the evidence that they were valid and in effect mortgages.

2. *Held,* that title 12 of chapter 17, Rev. Codes, was suspended and superseded by the national bankruptcy law of 1898.

3. *Held,* that sec. 5932 is a necessary part of said title 12 and not now in force.

4. *Held,* that assignments in conformity with the common-law rules relating to them are not void under sec. 3169.

5. *Held,* that under sec. 3171, Rev. Codes, the question of fraudulent intent as to transfers of property is one of fact.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Chas. P. McCarthy, Judge.

This action was commenced and prosecuted by respondent as plaintiff in said district court to have certain instruments, in form warranty deeds, declared to be mortgages and foreclosed as such. Judgment for plaintiff. *Affirmed.*

Martin & Cameron, for Appellants.

The deeds in this case from the insolvent Saunders to the Capital Lumber Company were not intended to be or to operate as mortgages.

Such a transaction does not constitute a mortgage, but an assignment for the benefit of two creditors and the debtor. (*White v. Cotzhausen*, 129 U. S. 329, 9 Sup. Ct. 309, 32 L. ed. 677; *Selz v. Evans*, 6 Ill. App. 466; *Northern Nat. Bank v. Weed*, 86 Wis. 212, 56 N. W. 634; *Watkins v. Jenks*, 24 Ga. 431; *Sabichi v. Chase*, 108 Cal. 81, 42 Pac. 29; *Stout v. Watson*, 19 Or. 251, 24 Pac. 230; *Kickbusch v. Corwith*, 108 Wis. 634, 85 N. W. 148; *Marshall v. Livingstone Nat. Bk.*, 11 Mont. 351, 28 Pac. 312.)

Such an assignment as made by Saunders was illegal and void as to the other creditors of Saunders, under sec. 5932, Rev. Codes.    (*Chever v. Hays*, 3 Cal. 471; *Adams v. Woods*, 8 Cal. 153, 68 Am. Dec. 313; *Groschen v. Page*, 6 Cal. 139; *Cohen v. Barrett*, 5 Cal. 195; *Barnett v. Kinney*, 2 Ida. 740, 23 Pac. 922, 24 Pac. 624.)

There was shamefaced fraud and connivance in this transaction between Saunders and these two creditors.    (*California Consol. Min. Co. v. Manley*, 10 Ida. 786, 81 Pac. 50.)

Intent to defraud is not necessary under sec. 3169.    Intent to delay is sufficient to make such a transaction as the one at bar void and of no effect under the terms of that statute. (*Van Nest v. Yoe*, 1 Sand. Ch. (N. Y.) 4.)

This court in *Johnson v. Sage*, 4 Ida. 758, 44 Pac. 641, has held that a transaction such as was planned by Saunders in this case was void as to the other creditors, as it violated the terms of sec. 3019, Rev. Stats., now 3168, Rev. Codes.

Saunders by his secret oral agreement with Ketchen, of the Capital Lumber Co., practically made these creditors trustees of a surplus fund to be sent out of the state to him when they had sold his property and first paid themselves. (*Bryant v. Young*, 21 Ala. 264; *Sims v. Gaines*, 64 Ala. 392, 397; *Campbell v. Davis*, 85 Ala. 56, 4 So. 140; *Chenery v. Palmer*, 6 Cal. 119, 65 Am. Dec. 493; *North v. Belden*, 13

Conn. 376, 35 Am. Dec. 83; *Moore v. Wood,* 100 Ill. 451; *Best v. Fuller etc. Co.,* 185 Ill. 43, 56 N. E. 1077; *Beidler v. Crane,* 135 Ill. 98, 25 Am. St. 349, 25 N. E. 655; *Macomber v. Peck,* 39 Iowa, 351; *Rice v. Cunningham,* 116 Mass. 466; *Sutherland v. Bradner,* 116 N. Y. 415, 22 N. E. 554; *Coburn v. Pickering,* 3 N. H. 415, 14 Am. Dec. 375; *Newell v. Wagness,* 1 N. D. 62, 44 N. W. 1014; *Smith v. Conkwright,* 28 Minn. 23, 8 N. W. 876; *Walkin v. Horswill,* 24 S. D. 191, 123 N. W. 668; *McCulloch v. Hutchinson,* 7 Watts (Pa.), 434, 32 Am. Dec. 776; *Adams v. Dempsey,* 35 Wash. 80, 76 Pac. 538; *Watkins v. Arms,* 64 N. H. 99, 6 Atl. 92; *Neubert v. Massman,* 37 Fla. 91, 19 So. 625; *Halcombe v. Ray,* 23 N. C. 340; *Molaska Mfg. Co. v. Steele,* 36 Mo. App. 496; *Winkley v. Hill,* 9 N. H. 31, 31 Am. Dec. 215; *Lukins v. Aird,* 73 U. S. (6 Wall.) 78, 18 L. ed. 750; *Bernhardt v. Brown,* 122 N. C. 587, 65 Am. St. 725, 29 S. E. 884; *Geary v. Porter,* 17 Or. 465, 21 Pac. 442.)

Karl Paine, for Respondents.

This is the test: If a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage. (*Brown v. Bryan,* 6 Ida. 1, 20, 51 Pac. 995; *Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484; *Boyer v. Paine,* 60 Wash. 56, 110 Pac. 686; 20 Cyc. 502, notes 70, 71; *Hudkins v. Crim* (W. Va.), 78 S. E. 1043.)

The act of preference being lawful, there is nothing from which fraudulent motives can be inferred, and any fraudulent motives the parties may have are wholly immaterial. (20 Cyc. 592; *Dana v. Stanfords,* 10 Cal. 269.)

When the paramount jurisdiction of Congress has once been exercised in the enactment of a bankruptcy law, all state insolvency laws are suspended in so far as they relate to the same subject matter and affect the same persons as the bankruptcy law. (5 Cyc. 240.)

The right of an insolvent debtor to prefer one or more creditors over others is not an open question in this state.

(*Wilson v. Baker Clothing Co.,* 25 Ida. 378, 137 Pac. 896, 50 L. R. A., N. S., 239.)

If the preference is otherwise unobjectionable, the particular form of the transaction by which it is made appears to be immaterial so far as the rights of other creditors are concerned, except where some positive statutory prohibition intervenes. (20 Cyc. 580, 581, note 96; *Ross v. Duggan,* 5 Colo. 85; *McClure v. Smith,* 14 Colo. 297, 23 Pac. 786; *Haseltine v. Espey,* 13 Or. 301, 10 Pac. 423.)

Such conveyances, where given in good faith and to secure an actual indebtedness, are not constructively fraudulent. (*Samuel v. Kittenger,* 6 Wash. 261, 33 Pac. 509; *Ritz v. Rea,* 155 Iowa, 181, 135 N. W. 645; *Merchants' State Bank v. Tufts,* 14 N. D. 238, 116 Am. St. 682, 103 N. W. 760; *McCormick Harvesting Machine Co. v. Caldwell,* 15 N. D. 132, 106 N. W. 122.)

The rule relied upon by appellants to the effect that a mortgage cast in the form of an absolute deed is void *per se* as to existing creditors is universally rejected in those states having a statute similar to sec. 3171. (*Huntley v. Kingman & Co.,* 152 U. S. 527, 14 Sup. Ct. 688, 38 L. ed. 540; *Dana v. Stanfords, supra.*)

TRUITT, J.—The respondent is a corporation engaged in the business of selling lumber and building material in the city of Boise, Idaho, and had been so engaged for a long time prior to the commencement of said action. Hezekiah Saunders for some years before July 1, 1912, had been a builder and contractor in said city and was at that time engaged in said business, and on account of lumber and other building materials purchased he became largely indebted to the plaintiff corporation, so that as found by the lower court the defendants, Hezekiah Saunders and Lucy Saunders, were indebted to the plaintiff in the total sum of $3,077.21 on July 1, 1912. Said Lucy Saunders is the wife of defendant Hezekiah Saunders. For the purpose of securing this indebtedness as contended by respondent, said Hezekiah Saunders and his wife, Lucy Saunders, on July 2, 1912, executed and

delivered to respondent the certain instruments in question in this case. They were in form warranty deeds, but respondent, as plaintiff below, brought action to have them declared mortgages and foreclosed as such. The other defendants who appealed, at the time said instruments were executed and delivered to respondent, were also creditors of Saunders, and on or about December 31, 1912, they commenced an action against him and his wife, Lucy Saunders, to collect the amount due and owning to them. At the time of commencing said action, a writ of attachment was issued in their favor and the real property conveyed by said instruments to respondent was duly levied upon. Said appellants are attaching creditors, and they appeared in the court below as defendants. They prayed in their cross-complaint that said deeds be declared fraudulent and void as against them, and asked that they be set aside. The trial court, however, found these deeds to be mortgages and declared a foreclosure of them and entered judgment accordingly. From this judgment respondents appeal.

A number of very interesting legal questions are submitted by the briefs and arguments of counsel, and we have therefore given them as careful consideration as our time would afford. The appellants' brief shows much research and care in its preparation, and in deciding the case we find it logical and convenient to consider the points of argument on the several questions presented as arranged in the brief. There are eight alleged errors presented, based upon findings of the court at the trial, but these are included in and presented quite fully by the four points of argument urged as grounds for the reversal of said judgment, which are as follows:

(1) "The deeds in this case from the insolvent Saunders to the Capital Lumber Co. were not intended to be or to operate as mortgages."

(2) "This transaction was a voluntary assignment by an insolvent debtor to two creditors with a secret interest reserved for himself."

(3) "Such an assignment as made by Saunders was illegal and void as to the other creditors of Saunders under section 5932, Idaho Revised Codes; and

(4) "That such transaction as made by Saunders, whether held by this court to be an assignment under sec. 5932 or not, was illegal and void as to the remaining six creditors under the terms, intent and spirit of sections 3168 and 3169, Idaho Revised Codes, and the well-established common-law rule covered and protected in intent and spirit by said sections."

Appellants in support of the first point presented quote sec. 3388, Rev. Codes, which defines a mortgage as follows: "A mortgage is a contract by which specific property is hypothecated for the performance of an act without the necessity of a change of possession," and also sec. 3391, Rev. Codes: "Every transfer of an interest in property other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by an actual change of possession, in which case it is to be deemed a pledge." In applying these sections to this case, it is urged that by the general rule of law and by these statutes, the instruments in question must have been given for the performance of an *act,* and that these instruments do not provide that Saunders shall perform any *act* or pay any money.

Sec. 3388, *supra,* gives a very concise definition of a mortgage, and by this definition we are unable to say that these instruments are not mortgages. In the transaction of business it often happens that a mortgage is given to secure a debt already incurred, and even in such case no *act* on the part of the mortgagor is required for its consideration: it would of course require an act, that is, the payment of the consideration to release it. But suppose the instrument, though in fact given to secure an existing debt, be in form a deed, as our statute declares it would be only a mortgage, the actual result as to the remedy is the same as if it had been in the usual form of a mortgage. However, sec. 3391, *supra,* and sec. 3392 we think bear directly upon this point, the last named section being as follows:

"The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing such transfer

to be a mortgage, be proved (except as against a subsequent purchaser or encumbrancer for value and without notice), though the fact does not appear by the terms of the instrument.''

The testimony shows and the court below found that ''plaintiff demanded security for the debt due it, and the defendants, Hezekiah Saunders and Lucy Saunders, elected to furnish security in the form of deeds instead of in the form of a mortgage without plaintiff's knowledge or consent, . . . . and that said deeds, as to the answering defendants and all the world, are valid and *bona fide;* that they were not executed and delivered to plaintiff in virtue of any secret agreement, scheme, or plan to hinder, delay or defraud any creditor or creditors of the defendants Hezekiah Saunders and Lucy Saunders, but were given solely to secure the said claim of plaintiff.''

But this court had this question before it in *Kelly v. Leachman,* 3 Ida. 392, 29 Pac. 849. In that case the deed and assignment to reconvey were held to be a mortgage. In *Brown v. Bryan,* 6 Ida. 1, 51 Pac. 995, the court held a trust deed to be a mortgage, and announced the broad doctrine that ''any hypothecation of property made by the debtor by his own voluntary act, as security for the payment of a debt which he owes to his creditor, whether made with or without the intervention of a third party as trustee, is, under the statutes quoted above, a mortgage, and to be so regarded and treated, whether the instrument by which such property is hypothecated is called a mortgage, deed, or trust deed, irrespective of its form or provisions.'' And then the test of a transaction of this kind is given as follows: ''If a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is in equity a mortgage.''

Again, in the recent case of *Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484, it was held that, ''Where an instrument in writing in the form of a deed or conveyance is executed and delivered as security for a debt, such instrument becomes a mortgage and not a deed, notwithstanding the form of the

instrument.'' Said sec. 3391 seems to have been considered and construed in connection with the decision in this case. We think these authorities and the facts as found by the lower court dispose of appellant's first point as not well taken.

The next point presented, that the transaction was a voluntary assignment by an insolvent debtor with a secret interest reserved for himself, will now be considered. The first authority cited in support of this point is *White v. Cotzhausen,* 129 U. S. 329, 9 Sup. Ct. 309, 32 L. ed. 677. An examination of this case shows that the Illinois voluntary assignment act was then in force, and the supreme court of the United States, was dealing with the provisions of that act in deciding the case. It will be found by an examination of this voluntary assignment act that it is similar to the proceedings in insolvency of this state and other states that had insolvency or bankruptcy laws prior to the enactment of the national bankruptcy law. For this reason *White v. Cotzhausen* cannot be accepted as authority in the case at bar, but even in the opinion in that case Mr. Justice Harlan says: ''We would not be understood as contravening the general principle, so distinctly announced by the supreme court of Illinois, that a debtor, even when financially embarrassed, may in good faith compromise his liabilities, sell or transfer property in payment of debts, or mortgage or pledge it as security for debts, or create a lien upon it by means even of a judgment confessed in favor of his creditors.'' But he adds that when a debtor is hopelessly insolvent, he will not be permitted to evade the statute by a preference in favor of only a part of his creditors and leave the others with no share in his estate. But in this he was simply construing said assignment act.

In *Northern National Bank v. Weed,* 86 Wis. 212, 56 N. W. 634, the decision was controlled by the statutes of Wisconsin then in force, and cannot be authority in this case. We have not had time to carefully examine the many other authorities cited by appellants in support of their second point, but all those that we have glanced over seem to have been controlled by the statutes of the states where they were tried,

and if this is really the fact, then unless such statutes were substantially like the statutes of this state touching the question under consideration, or if they are so connected with insolvency laws as to be only used in administering such laws, they would not assist in its determination. But even if left in doubt as to the weight of these authorities, the trial court passed directly upon what seems almost decisive of this question in the fact that it found as facts in the case that "said transfer was not made with a secret understanding or with any secret or other agreement or understanding that the plaintiff should hold said property until the defendants should see fit to sell the same, or with any agreement or understanding that in the event they should see fit to sell said property, the plaintiff should convert said property into cash and take from the proceeds enough to satisfy its said claims and turn the surplus over to the defendants." The trial court heard the evidence, saw the witnesses, and determined the weight of their testimony, and having then made these findings of fact, we are not inclined to disturb them. Moreover, we do not think the authorities presented by appellants sustain their contention on this point.

The third point presented by appellants is that such an assignment as they allege the one made by Saunders to respondent to be, was illegal and void as to his other creditors under sec. 5932, Rev. Codes. This raises a very interesting question, and one that has never been passed upon by this court, and we have found no authority that we regard as directly in point from other states. Under the common law, a debtor in failing circumstances could convey or assign his property to one creditor, notwithstanding it might work a preference in favor of such creditor and leave other creditors unpaid. The alert and diligent creditor might secure his debt as a reward for his diligence, and wherever the rights of creditors in this respect have been restrained or entirely taken away, it has been by statute, and in derogation of the common law. "By the common law a debtor has an absolute right to prefer in payment one creditor over another, and such a preference, in the absence of fraud, is perfectly valid

as against other creditors.  This right arises from the right of disposition which is incident to the absolute ownership of property.  It is well settled, therefore, that in the absence of express statutory provisions to the contrary, a debtor, although insolvent or in failing circumstances, may prefer one or more of his creditors by payment in money or other property or by giving security for the debt, and that the preference thus given will be valid, notwithstanding that the claims of other creditors will thereby be delayed or defeated; provided, however, that the debt is actual, that the property transferred does not greatly exceed the amount of the claim, and that the transaction is not a mere device to secure an advantage to the debtor or to hinder, delay, or defraud other creditors.  Such a preference, although it may, in paying one creditor, exhaust or so reduce the assets of the debtor as to leave other creditors unpaid and without the means of collecting their claims, does not of itself 'hinder, delay or defraud' creditors within the meaning of the general statutes on this subject.  The transaction 'does not deprive other creditors of any legal right, for they have no right to a priority'; and it 'is not fraudulent either in law or in fact.'  A creditor has a legal right to influence his debtor to give him a preference, and 'violates no rule of law when he takes payment or security for his demand, although others are thereby deprived of all means of obtaining satisfaction of their equally meritorious claims.' "   (20 Cyc. 572.)

The right of an insolvent debtor to prefer one or more creditors over others seems to have been directly passed upon by this court in *Wilson v. Baker Clothing Co.*, 25 Ida. 378, 137 Pac. 896, 50 L. R. A., N. S., 239.  In that case it was held that, "An insolvent corporation is not prohibited by the statutes of this state from preferring certain creditors over others in the due course of business where such preference is not collusively or fraudulently made.  A corporation, although insolvent, holds its assets just as a natural person holds his property, with the same power to dispose of it to secure or pay its debts, and neither a private person nor a

corporation can fraudulently dispose of his or its property to the injury or damage of his or its creditors.''

Having held that the deeds in controversy were mortgages, it follows that they are not assignments within the meaning of said section 5932, as they could not be both mortgages and assignments at the same time. But, assuming that said deeds were in fact assignments, then said section is suspended by the national bankruptcy law.

It occurred to us in reading said section that the phrase "provided in this title" is somewhat significant. The *title* referred to is title 12 of the Idaho Revised Codes, which contains the complete proceedings in insolvency of this state. Now, it may be interesting to inquire whether or not a section of an act which in order to be enforced must be assisted by, and taken in connection with, other sections of an entire act upon one specific subject or proceeding, in order to have its force and effect, can be detached from the other sections of the act and invoked as a remedy when the other sections thereof are suspended. Prior to the passage of the national bankruptcy law of July, 1898, said section 5932 was in force, because the insolvency law of this state of which it is a part was in force, and the deeds involved in this case would have been illegal and void as against the creditors of Saunders under said section, regardless of the question whether said deeds were otherwise made in good faith and without any intent to hinder, delay or defraud his other creditors. And this brings before this court the important and somewhat novel question as to whether the enactment of the national bankruptcy law *ipso facto* suspended our state insolvency law including said section. The provision of the constitution of the United States conferring upon Congress the power "to establish uniform laws on the subject of bankruptcies throughout the United States," of necessity constitutes any act of Congress passed upon that subject the supreme law of the land, and it was determined by the courts at an early day that a national bankruptcy law suspended and superseded the operation of any and all state insolvency laws whenever there was a conflict between them.

Appellant cites *Duryea v. Guthrie,* 117 Wis. 399, 94 N. W. 365, as a case "much in point," and we have, therefore, given the opinion in the case quite a careful reading, but it does not sustain the contention of appellant as we understand it. Christopher Guthrie was a resident of the city of Superior, Wisconsin. He was hopelessly insolvent at the time, and on October 16, 1901, he made and delivered to one W. E. Muse, who was then a citizen of Chicago, Ill., an instrument in writing whereby he assigned and delivered to Muse all his property, consisting of merchandise of the value of $5,000, situated in the city of Superior, for the express purpose, as stated in said instrument of assignment, that Muse would receive the same in trust and would sell the property, reduce the same to money, and distribute the proceeds thereof among the creditors of Guthrie *pro rata* without preference. Duryea, the plaintiff, was one of these creditors, and he, not being satisfied with said assignment, commenced an action for his debt and at the same time garnished Muse. Duryea urged a statute of the state of Wisconsin to defeat the said assignment, that statute being as follows: "All voluntary assignments, or transfers whatever of any real estate, chattels real, goods or chattels, rights, credits, moneys or effects for the benefit of or in trust for creditors shall be void as against the creditors of the person making the same unless the assignee shall be a resident of this state and shall, before taking possession of the property assigned and before taking upon himself any trust conferred upon him by the instrument of assignment, deliver to the county judge or court commissioner of the county in which such assignor or some one of the assignors at the time of the execution of such assignment shall reside, not being a creditor of such assignor, a bond duly executed." The said assignee, Muse, was a resident and citizen of Illinois, and he also failed to give a bond as required by the statute. For the reason that said assignee was not a citizen of the state of Wisconsin, the court held this assignment void under the provisions of said statute. The assignee urged that the said statute was *ipso facto* suspended by the national bankruptcy law, but the court decided that

said statute "only assumes to regulate and control the manner in which such assignments shall be made and executed," and that it only dealt with the making and administration of common-law assignments, and was not in conflict with the national bankruptcy law.

It will be observed that a clear distinction is drawn between proceedings under a general insolvency statute of a state and one that simply permits and regulates general assignments for the benefit of creditors. This distinction between a state insolvency statute and a statute permitting and regulating general assignments for the benefit of creditors is clearly pointed out in *In re Sievers,* 91 Fed. 366. In that case, which was in Missouri, the contention hinged on the question as to whether the national bankruptcy law suspended the voluntary assignment statutes of the state, and the court on this subject said:

"Concerning these different contentions, it appears to me that there is a substantial difference between a proceeding under a general insolvency statute and one under a statute permitting general assignments. The one administers upon the estate of an insolvent as a proceeding in the courts, derives its potency from the law, winds up the estate judicially, and discharges the debtor. Such is essentially a proceeding in bankruptcy, and such is undoubtedly superseded by the act of Congress in question. . . . . It results from these views that, while proceedings under the insolvency laws, as such, are now void whether proceedings in bankruptcy follow or not, proceedings under the general assignment laws of states, like Missouri, or under the common-law deed of assignment, are not void or voidable, unless proceedings in bankruptcy are subsequently instituted."

We think it will be found on examination of the later authorities cited by appellant that these are in line with the case of *In re Sievers* as to the distinction there pointed out between the insolvency statutes of a state and statutes regulating general assignments. The cases cited by appellant that date prior to the enactment of the national bankruptcy law, such as the early California cases, dealt entirely with

statutes in the nature of insolvency laws, or statutes regulat-
ing general assignments under the common law.   But, with-
out further examination of authorities on this point, we are
decidedly of the opinion that sec. 5932 cannot be detached
from the body of the insolvency laws of this state, of which
it is a part, and made effective to defeat the object and intent
of the deeds given by Saunders to respondent.   If it is a
necessary part of said law, it is suspended by the national
bankruptcy law, and if it is not a part of said insolvency law,
it was from its passage delusive and ineffective for the pur-
pose for which it was intended, for it has no power whatever
if detached from the act or title to which it evidently belongs.
It cannot authorize an insolvent debtor to make any kind of
an assignment "otherwise than provided in this title," and
"this title" is the proceedings in bankruptcy of this state;
therefore, it cannot authorize an assignment except when a
person as an insolvent debtor avails himself of the insolvency
law.   Moreover, this section relates back to sec. 5884 of said
title 12, and that section is as follows:

"As soon as the assignee is appointed and qualified, the
clerk of the court must, by an instrument under his hand
and seal of the court, assign and convey to the assignee all
the estate, real and personal, of the debtor, with all his deeds,
books, and papers relating thereto, and such assignment re-
lates back to the commencement of the proceedings in insol-
vency, and by operation of law vests the title to all such
property and estate, both real and personal, in the assignee.
Such assignment vests in the assignee all the estate of the
insolvent debtor not exempt by law from execution, subject
to the lawful and *bona fide* liens and encumbrances thereon."

This is the only part of the act that provides for the assign-
ment of a debtor's property, and this is made by operation
of law through the clerk of the court, not by the debtor him-
self; thus it will at once be seen that said section is a vain
and useless thing, without purpose or power, unless taken
as a necessary part of the state insolvency law.

Counsel for appellants in his argument suggested that as
this is an equity case, this court should take a broad and
equitable view of the matter and endeavor to do substantial

justice between the parties, but from this angle of the case, we fail to see any just or reasonable cause for the law or this court, under the claim of preventing a preference in favor of one creditor, to take from him what his diligence has secured, and turn it over to another creditor who will then enjoy the same preference to the exclusion of all others. Furthermore, the national bankruptcy law court was open to appellants, and at any time within four months after said deeds were given and placed on record, they might have gone into said court and had them set aside under section 60 of the national bankruptcy law, and then the estate would have been administered by said court and equitably distributed among all creditors including appellants.

The fourth and last point of the argument of counsel for appellants is addressed to specifications of errors numbers 7 and 8, and these are based upon sections 3169 and 3168, Rev. Codes. It is urged as to said sec. 3169 that the mere execution, delivery and placing on record of the deeds in question without a defeasance rendered them fraudulent, *per se,* and that the trial court had no right to hear evidence or make findings of fact as to the intent with which they were made. But without going into a lengthy review of the numerous authorities cited on this point by the brief of appellants, we think sec. 3171, Rev. Codes, determines this contention:

"In all cases arising under the provisions of this title, except as otherwise provided in the last section, the question of fraudulent intent is one of fact, and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

But counsel for appellants attempts to evade this section by urging that sec. 3169 makes a transfer of property void when "taken with intent to delay or defraud," and that *intent* to *delay* is not within the purview of said sec. 3171. But we think the word "delay" would have been out of place and incongruous in that section. While there may be certain acts, the mere commission of which would be a fraud *per se,* we are not advised of any authority that imports damage or injury to delay of any kind as a question of law.

Delay and its consequences are questions of fact, and in any case where injury or damage was alleged to have been sustained by *delay,* that would raise a question of fact and require proof.    The court below heard evidence on the question as to whether these deeds were made with intent to delay or defraud the creditors of Saunders, and it found as a fact, "that said transfer was not made or taken with intent to hinder, delay or defraud the answering defendants or either of them, or the other creditors of Hezekiah Saunders and Lucy Saunders."    There is nothing new presented on this point; said sec. 3169 substantially puts in to our statutory law the long-established rule of the common law upon the same subject.    Under the common-law rule and under statutes similar to ours, the test question as to the validity of a conveyance of a debtor to a creditor is: Was it a *bona fide* transaction?    If made with an intent to delay or defraud the courts would set it aside if such an intent was proved in proceedings before them.    To reverse the case at bar on this point, we would have to set aside the findings of the trial court, and under the evidence and the law we are not justified in doing this.    Sec. 3168 relates, as suggested by counsel for respondent, to personal property only, and has no bearing on the point last presented for consideration.

The judgment is affirmed, with costs to respondent.

Sullivan, C. J., concurs.