R. G. HOSKINS, Trustee, Appellant, v. JOSEPH ELMER JOHNSTON et al., Appellees; I. M. JOHNSTON, Cross-appellant.

MAY 15, 1928.

*Locke & Lampman* and *J. E. Tidrick,* for appellant.

*Chester J. Eller* and *W. H. Downing,* for appellees.

DE GRAFF, J.—This action was commenced by the duly appointed and qualified trustee in bankruptcy of the estate of Joseph Elmer Johnston, bankrupt. The prayer of the petition is that the title to the real estate in question be transferred to said plaintiff-trustee for the benefit of the creditors of Joseph Elmer Johnston, husband of the grantee I. M. Johnston. The trial court granted the relief prayed by plaintiff, and vested the absolute fee-simple title to the real estate in the trustee. In passing, it may be said that the rights and claims of the interveners, O. Holmes and Chester J. Eller, were determined adversely to the plaintiff-trustee, and, although an appeal was taken by the plaintiff, it has not been prosecuted in this court. The rights asserted by the interveners stand adjudicated.

Two questions are presented for decision on this appeal.

The primary question is whether, as between the bankrupt's creditors and the bankrupt's wife, the bankrupt should be held, upon the evidence adduced, to have been the owner of the property. In other words, does the evidence sustain the finding that the conveyance from a third person to the wife of the bankrupt was fraudulent? This is a question of fact. The secondary question is: Was the trial court justified, as a matter of law, in vesting the absolute title in the trustee? Should the trial court simply have established the lien of the plaintiff against the real estate as prior and superior to the claimed rights of the grantee? This presents a question of law.

I. The real estate in controversy was owned by the Liberty Investment Company, and conveyed by it directly to the defendant I. M. Johnston, the bankrupt's wife, by deed dated March 12, 1925, and filed for record March 26, 1925. The consideration recited is one dollar and other valuable consideration. On the face of this deed, the defendant-wife is the owner of the legal and equitable estate. At that time, the bankrupt, Joseph Elmer Johnston, was indebted on a promissory note to the Citizens State Bank of Earlham for $6,300, dated May 21, 1924. Voluntary petition in bankruptcy was filed October 20, 1925, which scheduled, in addition to the debt owed to the bank, nine other claims, amounting to some six or seven hundred dollars, the dates of contracting of which do not appear. The record shows the existence of the indebtedness to the bank, as represented by the note.

It appears that the Primghar property (the real estate involved) was paid for by means of a conveyance of 240 acres of Cerro Gordo County land by the bankrupt to the Liberty Investment Company, in which conveyance the wife joined. This deed is dated and acknowledged on the same day as the deed by the Liberty Investment Company to I. M. Johnston, wife of the bankrupt. The title to the Cerro Gordo County land was in the name of the bankrupt, under deed dated and acknowledged January 27, 1924, and was paid for by a deed dated and acknowledged February 3, 1924, whereby the bankrupt and his wife, I. M. Johnston, conveyed a garage property in Stuart, Iowa, to the grantors of the Cerro Gordo County land. To this point, the evidence shows that the bankrupt paid for the property in controversy with property of which the bankrupt was the

owner and legal title holder. It is the claim, however, of the defendant-wife that the Stuart garage property was, in fact, her property, by virtue of a deed from the bankrupt to her of date August 18, 1920. This deed was never recorded, and the legal title stood, at all times, on the public records in the name of the bankrupt, Joseph Elmer Johnston.

The trial court entertained the view that, although a deed to the Stuart garage property was duly executed and acknowledged by the husband (bankrupt) to his wife, the deed was, in fact, never delivered. This is a pertinent question. Although the evidence gives rise to conflicting inferences and implications, we discover no sufficient reason for disturbing the finding of the court on the factual side.

It is the claim of the defendant-wife that the failure to record the deed was due to oversight. The bankrupt was not a witness upon this trial. He was examined before the referee in bankruptcy, and the clerk in the bankruptcy court was called as a witness on behalf of plaintiff. On cross-examination, he testified as to examination of the bankrupt, and identified the transcript thereof, from which the defendant-wife read certain matters into the record on this trial, including the following:

"The consideration that passed from my wife to me for the conveyance of the Stuart property was that we had always worked hard together, and I had quite a little at that time that was clear, and I just thought I would give her that to keep and enjoy the rents from. Mrs. Johnston had helped work in the field with me and milk cows the entire nine years we were on the farm. At the time the deed was executed, she furnished me with some money, and before that. She rented the property, and has possession of it, and received the rent. She has been the owner of that property ever since,—supposed to be,—she always called it hers."

Further quotation from the transcript is as follows:

"When I gave the $6,300 note to the bank, in 1924, I did not inform the bank that I had given all my property to my wife. There was nothing said about it at all. In 1920, we traded the Stuart garage for another farm, located south of Mason City. There was $5,000 against the garage at that time. There was $20,000 against the Cerro Gordo County farm. We traded the Cerro Gordo County farm to the Liberty Investment Company

of Des Moines for the property in Primghar, last March. Title to the garage in Stuart was taken in my name. The title to the Cerro Gordo County farm was taken in my name. The title to the Primghar property was taken in my wife's name. The contract for the trade for the Primghar property was made in my name.''

The testimony of the defendant-wife upon this trial is to the effect that she and the bankrupt had been married for 31 years, and that they started working together, ''to acquire what property we later acquired. I picked corn, and helped in the hayfields. Then we moved into Earlham. I continued to help him there. I helped in the field until we left the farm and moved to Earlham, in 1914. About 1920, Mr. Johnston and I had an arrangement whereby we divided up our property. A good many years ago, it was understood that I was to have something, because I turned back all the money I didn't use to Mr. Johnston; and I also received money from home, and I turned that over to him. All of that was prior to 1920. At the time we left the farm, we had that kind of talk: that he was to turn over some property to me, in payment of the money he had gotten from my folks. In 1920, he turned over the Stuart garage to me. I asked Mr. Johnston to have it put on record, and he put it with his papers, and neglected having it done. I supposed it was made of record. I didn't find out it was not of record until we traded the garage off. Mr. Johnston acted as my agent in trading the garage. I took possession of the garage, after the deed was executed. I collected the rents under the lease.''

Mrs. Johnston denies any fraud or fraudulent purpose, and states that she first discovered that her husband was involved in debt about the time of a mortgage loan on the garage for $5,000, bearing date November 14, 1922. It may be observed that this mortgage on the Stuart property was executed by Joseph Elmer Johnston, and the wife signed with him. It was not her mortgage, although she now claims that the legal title was in her at that time, by reason of the execution of the deed by her husband on August 18, 1920.

It may be pointed out further that the bankrupt testified in the bankruptcy court as follows:

''Q. Was it [the deed] delivered to Mrs. Johnston? A. No. I brought it down and put it on file in the office, and was going to

give it to her, and have it put on record, but I never thought any more about it."

No objection to this testimony appears of record.

There is also evidence given by the president of the Earlham Bank, that, in June or July, 1925, the bankrupt "stated that he wanted to get a loan on his property that he owned at Primghar, and pay off the indebtedness to the bank. He said he owned his store building there. He said he traded the farm he owned in Cerro Gordo County for it." About that time, the bank found that the Primghar property was in the name of I. M. Johnston.

As previously noted, the evidence discloses that the Primghar property was exchanged for real estate, the legal title to which was in the bankrupt. The wife undertook to prove that the Primghar property belonged to her, by virtue of the deed to her of the Stuart garage. The proof is not sufficient to establish that the deed was delivered to her. According to the testimony of the bankrupt, it was not delivered. The wife's testimony is that the deed was "in the file." That a lease of the Stuart garage property was made in her name to O'Laughlin and Bast is of little consequence or probative value. No testimony was offered as to the circumstances attending the execution of the deed, by whom it was drawn, who was present, when or where it was signed, or what was said. The husband was not produced as a witness, to explain the facts of which he had knowledge, or to explain his testimony in the bankruptcy court. He subsequently occupied the property for his business, under a claimed lease from his wife. He declared the property to be his own, mortgaged it, sold it as his own, and the wife joined in the deed merely to release her dower.

The intimate relationship existing between husband and wife, particularly in view of his wife's participation in his business, not only requires close scrutiny of their transactions with each other to the prejudice of creditors, but gives rise to some implications of knowledge. It is reasonable to assume that, if the parties had considered the deed as a good-faith and completed transaction, and that the husband had, in reality, conveyed the property to her, and that the failure to record the deed was merely an oversight, they naturally would have recorded the deed when the oversight was discovered, and when an exchange was about to be consummated.

The further fact stands that the contract for the exchange of the Stuart garage property for the Cerro Gordo farm was made in the husband's name, and the title to the farm was taken in his name. The fair inference is that conditions were becoming acute when the deal for the Primghar property was made. Bankruptcy was imminent. The testimony of the wife is not at all satisfactory, since it fails to show the amounts, dates, occasion, or circumstances of the claimed loans of money by her to the husband. A careful review of the record justifies the finding made by the trial court that the Primghar property was the subject of a fraudulent conveyance, to defraud creditors of the bankrupt.

II. An action in equity in the nature of a creditor's bill is not, in a strict legal sense, the "setting aside of a conveyance." This is not what, in fact, takes place. The conveyance is not set aside, in a literal sense, but the lien of the plaintiff is established against the real estate as prior and superior to the rights of the grantee, and a deed to the real estate is voided only so far as to permit the lien of the creditor to be established as prior and superior to the rights of the grantee. In other words, it is a *pro tanto* or quasi setting aside of the deed, so as to permit the rights of creditors to intervene. It is not the setting aside the conveyance absolutely, so as to vest title in the trustee. This is the quite universal doctrine, and is the settled law in Iowa. *Crowley v. Brower*, 201 Iowa 257; *Bond v. Warren County State Bank*, 201 Iowa 1175. The words in the instant decree that plaintiff "is the absolute owner in fee" are unfortunate, and should be eliminated.

The National Bankruptcy Act establishes a uniform system of bankruptcy, and regulates, in all their details and relationships, the rights and duties of the debtor and creditor. State courts have jurisdiction concurrent with that of the courts of bankruptcy of actions by trustees in bankruptcy to set aside alleged fraudulent transfers or conveyances of property made by the bankrupts upon whose estates they are appointed to administer. A trustee in bankruptcy stands in the place of the creditors of the bankrupt, and has the same rights and may pursue the same remedies in their behalf as they would have been entitled to if there had been no adjudication in bankruptcy.

In *Norcross v. Nathan* (D. C. Nevada), 99 Fed. 414, it is said:

"The conclusion reached is wholly independent of the question whether or not the state courts have jurisdiction over a cause of action like the present. It must be conceded that the trustee might bring a suit in the state court, and, where the parties or property involved are situate in a county remote from the place where this court is held, it would, perhaps, be advisable for him to do so, in order to save expense or great inconvenience to the respective parties. All that is decided is that the state courts do not have the exclusive jurisdiction, and that this court, as a court of bankruptcy, has concurrent jurisdiction with the state courts to hear and determine controversies of this character."

For the purpose of setting aside a fraudulent conveyance, the trustee in bankruptcy is regarded as standing in the position of a judgment creditor, both by the terms of the Bankruptcy Act, which permits him to attack such a conveyance, and in accordance with many adjudicated cases. Title to the land in question did not pass to the trustee in bankruptcy by virtue of his appointment as trustee. The difficulty in the way of the plaintiff is that the fee never was in the bankrupt. See *London v. Epstein*, 138 App. Div. 513 (123 N. Y. Supp. 399, 24 Am. Bank. Rep. 557).

There is no conflict of authority between the Federal and the state court in a matter of this character. There is no occasion for division of jurisdiction. The court first taking jurisdiction of the substance of the litigation disposes of all the incidents. *Tefft v. Sternberg* (C. C., S. D. Ga.), 40 Fed. 2.

In the instant case, it was proper for the trial court to establish the lien of the plaintiff against the real estate, and that lien, when established, is foreclosed by sale under execution, not in the bankruptcy court, but in the state court. All that the trial court was authorized to do was to establish the claims allowed in bankruptcy as a lien upon the property in favor of the trustee to the same extent as it would have if bankruptcy proceedings had not been instituted and the action was pending in the name of the creditor. This is our express holding in *Crowley v. Brower*, supra.

The trial court does not assume to distribute among the

creditors the proceeds which may be realized from the sale of a property on special execution, as this is within the province of the bankruptcy proceeding. As said in the *Crowley* case, supra:

"The burden rested upon appellant [trustee] to allege and prove such facts as would avoid the conveyance as to creditors, or subject the property to the payment of some or all of the claims allowed in the bankruptcy court. The transfer was void only to the extent found by the court in favor of the trustee, and it was the duty of the court to establish the same as a lien against the property, and not to set aside the conveyance absolutely so as to vest title in the trustee."

The decree entered by the trial court will be modified accordingly, and as so modified, it is—*Affirmed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.