W. R. RELPH, Trustee in Bankruptcy, Appellee, v. FRED R. GOLTRY et al., Appellants.

No. 41304.

FEBRUARY 9, 1932.

O. M. Slaymaker and R. E. Killmar, for appellants.

Mabry & Mabry and J. D. Threlkeld, for appellee.

EVANS, J.—On December 8, 1930, Fred Goltry was adjudged a bankrupt, in the Federal Court. More than four months prior to that time, and on July 18, 1930, he had conveyed his farm to his wife, Ollie. This farm consisted of 112 acres, which comprised 40 acres of homestead. It was encumbered by a mortgage of approximately $4000. The consideration for the conveyance was nominal only. On the other hand, the non-homestead part of the farm had no margin of value over and above the mortgage thereon. This portion of the farm is referred to in the record as the "seventy-two acres," and we shall so refer to it.

In the spring of 1931 the bankrupt, by arrangement with his wife, devoted 40 acres out of the 72 acres to a crop of oats seeded by him. The rest of the land was in pasture. This field of oats became the bone of contention. As a growing crop, the plaintiff, as trustee, asserted his right to possession thereof. In support of his asserted right he brought his action in the district court of Lucas County and prayed for a temporary injunction to restrain the defendants from interfering with his alleged right of possession. In his petition he predicated his asserted right upon two grounds:

(1) That under the Bankruptcy Act all right and title of the bankrupt to any and all property was immediately vested in the trustee.

(2) That such asserted right had been twice adjudicated in his favor by the district court of Lucas County prior to the bringing of the present suit.

The final decree entered, did not indicate which ground, if either, was adopted by the district court.

I. So far as the possession of the land was concerned, as distinguished from the possession of the growing, and finally matured, crop, the Bankruptcy Act does not necessarily support the plaintiff's claim. The legal title was in the wife. Even though voidable, it was valid until avoided. No jurisdiction over her was had in the bankruptcy court. The force and effect of her deed was therefore relegated by the bankruptcy court to the state court for determination. The question was in no sense pre-determined by the Federal court before it reached the state court. Perceiving the force of this pronouncement, the plaintiff pleaded herein that the question had been twice adjudicated in his favor in the state court, wherein the transfer was set aside on the ground of fraud. This is the plaintiff's second predicate. It is made to appear that in August, 1930, one of the creditors of the bankrupt levied an attachment upon this real estate under the provisions of Section 12106, and that he filed a creditor's bill challenging the validity of the deed to the wife, as against the creditor of the bankrupt. This creditor prevailed. The decree established a lien in his favor upon the land and made it prior and superior to any claim of the wife's under her deed. In that respect the decree was in the usual form, upon a creditor's bill. The scope of the adjudication was limited to the rights of the particular complaining creditor, and to none other. It did not purport to interfere in any manner with the present right of possession of either the grantor or the grantee in the deed. There was, therefore, nothing in that decree which was available to the trustee-plaintiff in support of his present action. Neither he nor any other creditor was within the scope of the adjudication. To this may be added that the decree itself became wholly nugatory under the Federal statute by the adjudication in bankruptcy within four months after the entry of decree. Nor do we find any support for the plaintiff in the other alleged adjudication relied on by him. The existing mortgage upon the farm was held by the Federal Land Bank of Omaha. It instituted a foreclosure proceeding upon its mortgage and prosecuted the same to a decree. It made no attack upon the transfer to the wife. Both husband and wife were parties to the mortgage. But the plaintiff, trustee, himself intervened in

such action. He claimed a right to have a part of the mortgage debt apportioned and charged to the homestead. This relief was denied to him. He also directed his pleadings as a creditor's bill against the husband and wife, and challenged the validity of the deed from husband to wife. On this feature of his petition of intervention, he was granted relief. The decree awarded him a *lien*, subject to the lien of the Federal Land Bank mortgage and superior to the wife's deed. This was the full extent of the relief awarded him in such decree. It did not give him a right of present possession; nor did it set aside the deed of the wife, in any other sense than that it established a lien in favor of the plaintiff. The decree for the foreclosing plaintiff fixed the amount of the indebtedness as approximately $4400. Special execution was issued, and sale was had thereunder on May 26, 1931. At such sale the property was sold for the exact amount of the judgment,—the attorney for the defendants being the bidder.

The plaintiff contends that the margin of value, if any, of the land over the amount of the bid, is not sufficient to justify a redemption on his part. He disclaims any intention to redeem. His attitude in argument is that, unless he is permitted to take possession and take the crop, or the rental, he will not be able to realize anything whatsoever thereon. This is only saying that the subject matter of the litigation has evaporated, and that the plaintiff is pursuing a shadow of what might have been if the land had had sufficient margin of value to justify controversy.

On the question of the rights and remedies of a trustee in bankruptcy under a creditor's bill in the state courts, and the limitations upon such remedies, see Crowley v. Brower, 201 Iowa 257, and Hoskins v. Johnston, 205 Iowa 1333. To similar effect see McKay v. Barrick, 207 Iowa 1091; and Lambert v. Reisman Co., 207 Iowa 711. We have no need herein to pursue further this feature of the case.

II. Upon this attitude of the plaintiff, the question naturally arises: What interest has he, or can he subserve for the creditors, by his present maintenance of the mere possession of the land? The question litigated below has become largely moot. If it be conceded that there was a time in 1931 when he was entitled to take the mature crop as the property of the bankrupt,

and was therefore entitled to temporary possession, as an incident of taking possession of the crop, yet it does not follow that he was, or is, entitled to a permanent injunction. In July or August, 1931, he took the matured crop and sold it, standing, for $12.50. For that sum the threshing machine delivered to the purchaser 1600 bushels. The plaintiff collected an additional sum of $10.00 for pasture. The decree appealed from was entered in October, 1931. The issue between the parties was very narrow. The only relief which the court could give to the plaintiff was to sustain the continuance of the injunction; and the only possible relief to the defendants was to deny it. And such is the alternative confronting us now. If we continue this injunction in force, we must be able to see some equitable reason therefor. If we dissolve the injunction, our order can operate only *in futuro*. The planting and the gathering of 1931 have become a thing of the past. They are *fait accompli*. A present dissolution of the injunction will not undo what has been done. To that extent the case is moot, and we will not now undertake to collect the water that has passed over the dam. What is clear upon the record is that the plaintiff is not at the present time entitled to a continuation of the injunction. As a witness, he has been unable to suggest any beneficial use available to him by retention of possession. As a witness, he testified as follows:

"I don't know as I need to make any further claim to the land from which the oats were cut off, but if any need arose, I would claim that I had that right."

This is only assuming the attitude of a "dog in the manger." The statutory period of redemption allowed to the owner of the land will expire on May 26, 1932. We may assume it as a possibility that the wife, as the legal owner, might, with the help of her homestead, be able to finance a redemption from the sheriff's sale. Her right to redemption would be exclusive in the last three months of the redemption year. If the plaintiff be permitted arbitrarily to retain the naked possession of the land until May 26, then there can be no planting of crops for the year 1932, and the land must lie fallow for the ensuing year. Such a cloud upon the title would necessarily depreciate the value of the property and its availability as security for a new debt. If the creditors of the bankrupt have any possible finan-

cial interest in the maintenance of such an attitude by the trustee, it ought to be rendered apparent. Equity maintains injunctions sparingly, and only for equitable reasons. The plaintiff has had the full benefit of the injunction throughout the year 1931. He has wiped the platter clean. True, he has realized but little, and perhaps less than he ought. .His case has been reduced in magnitude to a "tempest in a teapot." The plaintiff has himself demonstrated that the 72 acres had no appreciable margin of value over the existing mortgage when the transfer to the wife was made. We think he has already received all the equitable aid to which in any event he can be entitled.

Disregarding, therefore, the past operation of the injunction upon the respective rights of the parties, we hold that the injunction should now be dissolved forthwith.

It is so ordered. Reversed.

WAGNER, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.