# IN THE SUPREME COURT OF IOWA

No. 08–2009

Filed February 25, 2011

**LARRY SCHAEFER** and **ELAINE SCHAEFER,**
Husband and Wife,

    Appellees,

vs.

**RAYMOND SCHAEFER,**

    Appellant.

------------------------------------------------------------

**G.R.D. INVESTMENTS, LLC,**

    Appellant,

vs.

**LARRY SCHAEFER** and **ELAINE SCHAEFER,**
Husband and Wife,

    Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Bryan H. McKinley, Judge.

Plaintiffs seek further review of the court of appeals' decision reversing the district court's ruling granting their petition for forcible entry and detainer and quieting title to real property conveyed to defendants prior to the plaintiffs filing bankruptcy in favor of plaintiffs. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

Steven R. Bakke of Bakke Law Office, Forest City, for appellants.

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellees.

**CADY, Chief Justice.**

In this quiet title action, we must decide whether, under Iowa law, a bankruptcy court's order voiding a debtor's transfer of real estate to a transferee automatically returns the property titles to the debtor. The district court found in favor of the Schaefers after the bankruptcy court voided the transfer of the property from the Schaefers to G.R.D. in favor of the trustee. We transferred the case to the court of appeals. The court of appeals reversed the district court, finding the property titles remained with G.R.D. after bankruptcy. On further review, we vacate the decision of the court of appeals and reverse the decision of the district court.

## I. Background Facts and Proceedings.

Larry and Elaine Schaefer are husband and wife. They live in Cerro Gordo County where they own land and farm for a living. The Schaefers began to experience financial troubles after a $127,125 judgment was entered against Larry in 1998 for breach of a grain contract.

In January 2001, the Schaefers formed a limited liability company called G.R.D. Investments (G.R.D.). The Schaefers designated themselves managers and listed their sons, Raymond and Dean Schaefer, as members. As part of the employment agreement with G.R.D., the Schaefers agreed to convey all the real estate they owned, except their homestead, to G.R.D. In May 2003, the Schaefers satisfied the judgment from the 1998 contract dispute.

In October 2003, the Schaefers filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Iowa. The court's appointed trustee brought an adversary proceeding against the Schaefers in March 2004. The action challenged the 2001 property

conveyances as fraudulent under 11 U.S.C. § 544(b)(1) (2000) and accompanying state law, Iowa Code chapter 684 (2003).

On September 21, 2005, the bankruptcy court entered an order finding the transfers to G.R.D. were "avoidable." Following the order, G.R.D. and the Schaefers entered into a settlement agreement with the trustee for the value of the property conveyed to G.R.D.

In March 2006, the trustee moved to amend the court's order that found the transfers "avoidable." The trustee asserted the order should have referred to the status of the transfers as "void." In an order dated June 7, 2006, the court granted the trustee's motion and changed the order to declare the transfers were "void." The final order stated the "debtors' transfers of real property to G.R.D. Investments, L.L.C. by quit claim deeds dated on or about January 16 and 17, 2001, are void under 11 U.S.C. § 544(b)(1)."

The trustee filed a "Satisfaction of Judgment," dated March 22, 2006. The filing referenced the amended order entered on June 7, 2006. The trustee, however, did not liquidate the real estate for a cash distribution to creditors. Instead, the settlement money was paid to the trustee after the amended order was entered. The Schaefers were eventually granted a discharge from bankruptcy.

Following the bankruptcy, the Schaefers consulted with a certified public accountant regarding the potential income tax consequences of the order by the bankruptcy court that voided the transfers. The accountant interpreted the order to simply mean G.R.D. no longer owned the property. He recommended the Schaefers claim the property's income for that year as their own.

The Schaefers' son, Raymond, farmed the land and paid rent to the Schaefers. In 2007, Raymond failed to pay the Schaefers rent. In

response, the Schaefers initiated an eviction action in district court in Cerro Gordo County. Raymond and G.R.D. responded to the lawsuit by filing an action to quiet title to the property in favor of G.R.D. The two actions were consolidated and heard by the district court on June 5, 2008.

The district court ultimately made two rulings in this case. On August 13, 2008, the court entered a ruling finding G.R.D. to be the owner of the property. It reasoned that, under Iowa fraudulent conveyance law, the bankruptcy court's decision to void the transfers to G.R.D. as fraudulent did not alter the relative property rights of G.R.D. and the Schaefers as parties to the transaction. The court found the rights of the parties were not altered when the judgment granted to the bankruptcy court was satisfied without selling the property. The court determined the Schaefers were entitled to immediate possession of their forty-acre homestead, but title to the nonexempt land conveyed to G.R.D. prior to bankruptcy remained with G.R.D.

The Schaefers filed a motion for enlargement of findings claiming the ruling was "based on a misunderstanding of the relationship between a trustee's avoidance rights under bankruptcy law[] and applicable state law on the rights of creditors to avoid transfers." In response, the district court modified its ruling in an order dated November 12, 2008. In its modified order, the court concluded the bankruptcy trustee acquired all of the Schaefers' real estate once the bankruptcy court entered the judgment that voided the transfer of the land to G.R.D. by operation of law. Accordingly, the court held the real estate had been returned to the Schaefers, like all undistributed property of the estate, at the conclusion of the bankruptcy case. Thus, the court reversed its prior holding and quieted title to all the disputed real estate in favor of the Schaefers.

G.R.D. and Raymond Schaefer appealed. We transferred the case to the court of appeals, and the court of appeals reversed the district court. In its decision, the court found "the bankruptcy court's amended June 7, 2006 order did not by itself transfer title to the properties to the trustee and/or that the satisfaction of judgment had the effect of releasing that order." Additionally, the court took judicial notice of the actual date the trustee filed the satisfaction of judgment pertaining to the voided transfer as "early 2007." The court ultimately decided G.R.D. owned the property under two separate holdings. First, it held the judgment was not itself sufficient to transfer title to the properties and the trustee would have had to obtain title to the properties to include them in the estate. Second, the court determined the satisfaction of judgment filed after the bankruptcy court's judgment released the judgment. The court concluded that a judgment voiding transfers as fraudulent is effectively a judgment making the transfers "voidable" not void. Additionally, the court recognized the trustee did not distribute the remaining properties or proceeds to the debtors at the conclusion of the bankruptcy as is customarily required for undistributed property of the estate.

The Schaefers requested, and we granted, further review.

## II. Standard of Review.

Forcible entry and detainer and quiet title claims are actions in equity. Iowa Code § 648.15 (classifying forcible entry and detainer actions as equitable); *id.* § 649.6 (classifying quiet title action as equitable). As a result, our review of the district court's decisions is de novo. Iowa R. App. P. 6.907. We give weight to the district court's factual findings, but are not bound by them. *City of Okoboji v. Okoboji Barz, Inc.,* 746 N.W.2d 56, 59 (Iowa 2008).

### III.  Analysis.

We begin our analysis of the issues on review by recognizing they require us to interpret the bankruptcy court's judgment and the effect of a voided transfer for the benefit of creditors on state law property rights. As a result, we briefly review the applicable framework of this analysis.

A fraudulent conveyance is "[a] transfer made or obligation incurred by a debtor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor . . . [or] [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation."  Iowa Code § 684.4(1)(*a*)-(*b*).  Creditors have the right to set a fraudulent conveyance aside and collect the proceeds to satisfy the debt owed.  37 Am. Jur. 2d *Fraudulent Conveyances and Transfers* § 1, at 520 (2001) [hereinafter *Fraudulent Conveyances and Transfers*].  A creditor seeking to set aside a conveyance must show prejudice, even if the transferor's fraudulent intent is evident.  *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.*, 412 N.W.2d 593, 596 (Iowa 1987).

Generally, fraudulent conveyance law operates to make the conveyance at issue voidable at the option of a qualifying injured creditor.  *See* Iowa Code § 684.7 (providing creditors with a cause of action and various remedies against the debtor and transferee); § 684.8(2) ("[T]o the extent a transfer is voidable in an action by a creditor under section 684.7 . . . , the creditor may recover judgment for the value of the asset transferred . . . ."); *see also Fraudulent Conveyances and Transfers* § 89, at 598 (noting the rule is generally accepted among courts).  Moreover, our fraudulent conveyance law voids the transaction as between the creditors of the transferor and the transferee, but does not render the conveyance void as between the

transferor and the transferee. *See* Iowa Code § 684.4(1) (stating a "transfer made or obligation incurred by a debtor is fraudulent *as to a creditor*" (emphasis added)); *see also id.* § 684.5 (providing present creditors with cause of action against certain transferees). This rule prevents the transferor from recovering the title fraudulently conveyed to a third party because "a fraudulent transferor should not be allowed to benefit from his own misdeed." *Jessen v. Jessen*, 41 P.3d 543, 546 (Wyo. 2002). Moreover, generally a judgment rendering the conveyance fraudulent "sets aside the conveyance between the grantor and the grantee insofar as it affects the creditor, but it does not set it aside as to the grantor." *Fraudulent Conveyances and Transfers* § 95, at 602.

Iowa has recognized creditors have a right to recover fraudulently conveyed property at common law from as early as 1868. *See Stephens v. Heirs of Harrow*, 26 Iowa 458, 460, 465 (1868). The common law rule, called the "Statute of Elizabeth," arrived in our country from England and was widely accepted and applied by courts of equity. 1 Thomas D. Crandall et al., *The Law of Debtors and Creditors: Bankruptcy, Security Interests, Collection* § 6:76, at 6-211 (rev. ed. 2004); *see also Postlewait & Creagan v. Howes*, 3 Clarke 365, 370 (1856) (recognizing the English roots for the rule in Iowa). The rationale for the right to reclaim fraudulently conveyed property is, and always has been, to prevent a debtor from "frustrat[ing] his creditor's rights and avoid[ing] his obligations by changing title to his assets." *Fraudulent Conveyances and Transfers* § 1, at 520 (footnote omitted). We have recognized "[t]he doctrine advances the principle that a debtor's property constitutes a fund from which debts should be paid and that the debtor may not hinder a creditor's right to proceed against the fund." *Graham v. Henry*, 456 N.W.2d 364, 366 (Iowa 1990). Our legislature codified the common

law rule in 1994 by enacting the Uniform Fraudulent Transfer Act. 1994 Iowa Acts ch. 1121 (codified at Iowa Code ch. 684 (2005)). This Act is the state law basis for the case before us.

**A. Background on Federal Bankruptcy Law.** Several sections of the United States Bankruptcy Code impact the bankruptcy court's judgment and aid us in defining the ownership status of the property at state law. Tracing the property's status during the bankruptcy case is vital to understanding its disposition today.

We begin by noting that the filing of a bankruptcy petition results in the automatic creation of an "estate" for the benefit of all the debtor's creditors. 11 U.S.C. § 541(a). The estate is broadly composed of all the debtor's legal and equitable property rights. *Id.* § 541(a)(1). The estate includes property the trustee recovers pursuant to a judgment voiding a fraudulent transfer. *See id.* § 541(a)(3) (including in the debtor's estate property that is recovered under § 550 after avoidance under § 544). Once the trustee has gathered the debtor's property into the estate, the creditors' claims are paid with the proceeds in order of priority established by the Code. *See id.* § 726. Property of the estate that is not disbursed to creditors must be either formally abandoned or paid out to the debtor before the case is closed. *See id.* § 554 (citing abandonment, administration, or retention in the estate as alternative dispositions of property of the estate); § 726(a)(6) (administration of property of the estate includes disbursement to the debtor of remaining property after all claims have been paid).

The bankruptcy trustee may initiate an adversary proceeding in the bankruptcy court against those transferees the trustee suspects may have fraudulently accepted property from the debtor. Fed. R. Bankr. P. 7001(1) (including in definition of "adversary proceeding" "a proceeding to

recover money or property"). The bankruptcy code empowers the trustee to bring this action in one of two ways: through a direct action under § 548 or through a derivative action under § 544. *See* 11 U.S.C. §§ 548, 544. Section 548 contains all relevant substantive provisions governing the right to avoid fraudulent transfers, including a statute of limitations. *Id.* § 548. In contrast, § 544 grants the trustee the rights of a creditor at state law. *Id.* § 544(b)(1). Section 544 directs the trustee to the state fraudulent conveyance law for the substance of the right to recover from third-party transferees. Under § 544, the trustee stands in place of an unsecured creditor at state law. *See id.* In Iowa, the derivative right contained in § 544 refers to Iowa's enactment of the Uniform Fraudulent Conveyance Act, Iowa Code chapter 684. The rationale for the derivative right is "the filing of a bankruptcy petition does not strip creditors of state-created rights to avoid transfers, it merely shifts that right to the creditors' representative." 4 William L. Norton, Jr. & William L. Norton III, *Norton Bankruptcy Law and Practice* § 63:7, at 63-36 (3d ed. 2009) [hereinafter Norton]. Once the right to avoid the conveyance is established, federal bankruptcy law controls the extent of the recovery from the judgment. *See* 11 U.S.C. § 550(a) ("[T]o the extent that a transfer is avoided under section 544[] . . . the trustee may recover, for the benefit of the estate, the property transferred . . . .").

In this case, the trustee initiated an adversary action against the Schaefers and G.R.D. pursuant to § 544(b)(1) using Iowa Code chapter 684. The bankruptcy court applied Iowa law to conclude the transfers had been made fraudulently. *See Sergeant v. G.R.D.* (*In re Schaefer*), 331 B.R. 401, 421–22 (Bankr. N.D. Iowa 2005). In doing so, the court recognized the trustee had standing as an Iowa creditor pursuing a claim under the Act. *Id.* at 416–17; *see also* 11 U.S.C. § 544 (providing that

trustee generally has rights and powers of a judicial lien creditor and creditor at state law); *Hoskins v. Johnston*, 205 Iowa 1333, 1339, 219 N.W. 541, 544 (1928) ("A trustee in bankruptcy stands in the place of the creditors of the bankrupt, and has the same rights, and may pursue the same remedies in their behalf as they would have been entitled to if there had been no adjudication in bankruptcy."). The bankruptcy court's judgment granted the trustee the right and power to recover the property, or its equivalent value, from the transferee. *See* 11 U.S.C. § 550 (defining liability of transferee of an avoided transfer).

Generally, the final step in a fraudulent conveyance action is recovery. *See In re DLC, Ltd.*, 295 B.R. 593, 602 (B.A.P. 8th Cir. 2003) (recognizing the final responsibility of the trustee under 11 U.S.C. § 544(b) is to recover the property avoided from the transferee if necessary to bring the property into the estate for distribution). The bankruptcy code gives the trustee the authority to recover either the property transferred or the value of the property. 11 U.S.C. § 550(a). The purpose of the trustee's avoidance power is to permit equal recovery for all similarly situated creditors of the estate and to maximize the amount of distributable property to unsecured creditors. Norton § 63:1, at 63-3, 63-4. As a result, the trustee is not limited in recovery to the amount owed to one creditor of the estate. 11 U.S.C. § 550; *compare Moore v. Bay*, 284 U.S. 4, 5, 52 S. Ct. 3, 3, 76 L. Ed. 133, 134 (1931) (recognizing that the trustee is not limited to recovering a specific amount of debt of one creditor), *with* Iowa Code § 684.7(1)(*a*) (limiting state creditor's recovery under Iowa Code chapter 684 to the amount necessary to satisfy claim). Instead, the trustee may recover the entire value of the interest fraudulently transferred and divide up the proceeds of the recovery in accordance with § 726. *See Moore*, 284 U.S. at 5, 52

S. Ct. at 3, 76 L. Ed. at 134 (holding the trustee may recover the entire value of the transfer, even if the creditor the trustee is using to establish standing is only owed a small portion of the value of the total transfer).

The Schaefers argue a judgment voiding the transfer of the property automatically brings the property into the estate. Avoidance of the transfer and recovery of the transfer are related, but distinct concepts. *See* 11 U.S.C. § 550 (separating the procedure of avoiding a transfer from the procedures involved in recovery of the voided transfer); *see also* Jay Auslander & Julie A. Goren, *Avoidance and Recovery of Fraudulent Transfers, in* 25 Am. Jur. 3d *Proof of Facts* 591, 599 (1994) ("Avoidance invalidates the transfer; recovery brings the property transferred or its value back into the estate."). Avoidance nullifies the transfer between the transferor and transferee as it relates to the creditor harmed by the transfer. 2 David G. Epstein et al., *Bankruptcy: Practitioner Treatise Series* § 6–79, at 201 (1992) [hereinafter Epstein]. Recovery is the remedy for avoidance that makes transferees "personally accountable to the estate for the return of the property or for its value" when avoidance itself is not sufficient to make the estate whole. *Id.* Property recovered from a transferee pursuant to a judgment voiding the transfer becomes property of the estate. 11 U.S.C. § 541(a)(3).[1]

---

[1]We recognize there are conflicting views about whether, as a general rule, recovery is required to bring property into the estate or whether avoidance itself is sufficient. *See* Epstein § 6–80, at 206 & n.20 (acknowledging the view that property must be recovered to become property of the estate, and that the difference is not typically controversial). The argument that property avoided automatically becomes property of the estate is premised on 11 U.S.C. § 541(a)(4), which includes the property interest that is automatically preserved upon avoidance in "property of the estate." *Id.* § 6–80, at 206 ("Recovery is necessary only when annulment of the transfer does not completely satisfy the estate."); *see also In re Burns*, 322 F.3d 421, 427 (6th Cir. 2003) ("[W]hen the avoidance of a transfer does not fully satisfy the estate, then the trustee may seek to recover the property transferred, but when the avoidance alone is a sufficient remedy, there is no need for the trustee to seek recovery."). As a result, a latent issue that exists in this case is whether 11 U.S.C. § 541(a)(3) or (a)(4) govern the status of the titles as property of the estate. This issue was not argued or briefed by

**B. Application to the Schaefers' Case.** The Schaefers argue the case may be resolved under bankruptcy law because the titles to the property became "property of the estate" under 11 U.S.C. § 541(a)(3) immediately upon the entry of the bankruptcy court's judgment declaring the transfers fraudulent. The Schaefers' central claim is that the bankruptcy judgment voiding the transfer not only nullified the transfer, but also effectively conveyed title of the property from G.R.D. to the trustee because the judgment voided "the entire interest" in the property at issue under 11 U.S.C. § 550. In addressing this issue, we afford the bankruptcy court's judgment its due force and effect if it intended to directly change the ownership status of the property because the court had exclusive jurisdiction over the Schaefers' property during the pendency of the case. 28 U.S.C. § 1334(e); *see also* 11 U.S.C. § 105(a) (providing the bankruptcy court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the bankruptcy code).

We address the Schaefers' claim by first recognizing the parties do not dispute that the trustee had the right to a judgment voiding the transfers from the Schaefers to G.R.D. and that this avoidance power was not limited to a certain value. The trustee not only had the right to avoid the transfer, he also had the right to recover the entire value of the transferred titles once a judgment voiding the transfers under state fraudulent conveyance law was issued. *See* 11 U.S.C. § 550 (providing the trustee may recover the entire value of the transfer from specified parties). Our duty in applying § 541(a)(3) is to decide whether the entry

_____

counsel at any stage of this case, and the district court did not have an opportunity to rule on it. As a result, we decline to address the issue of whether voiding the transfers of the property titles was sufficient to bring the titles into the estate under 11 U.S.C. § 541(a)(4). *See Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002).

of the court's judgment resulted in an immediate recovery, making the titles "property of the estate."

After examining the bankruptcy court's judgment voiding the transfers and its accompanying clarification order in light of applicable federal law, we find the bankruptcy court's judgment nullified the transfer as between the trustee and G.R.D., but not between the Schaefers and G.R.D. After obtaining the judgment voiding the transfer, the trustee was entitled to recover either the property transferred or the value of the property transferred. 11 U.S.C. § 550(a). The trustee in this case also had a third recovery option under the settlement agreement. The bankruptcy court's second order dated June 7, 2006, revealed the trustee requested the court reexamine the language in its initial order because the Schaefers and G.R.D. had failed to follow through with the agreement. The court's order explained that the trustee's remedies following its judgment voiding the transfers included both enforcing the settlement and "pursu[ing] his judgment." In doing so, the court clarified that the Schaefers could not use the prior judgment's "avoidable" language to circumvent the trustee's unqualified right to recover the titles if the settlement fell through. After the bankruptcy court's amended order was issued, the settlement was ultimately paid to the estate. As a result, the monetary settlement recovered by the trustee became "property of the estate" and the record shows it was distributed to creditors.

The Schaefers assert the law of judgments requires us to recognize that any court order affecting title to real estate is self-executing. We recognize the general rule that a judgment in an action concerning rights to property is "an involuntary realignment of [the parties'] interests in the property and in effect a conveyance from the losing party to the winning

party." Restatement (Second) of Judgments § 43 cmt. *a*, at 2 (1982). Yet, when a judgment only involves a personal claim regarding the rights of the parties, it is not governed by this rule. *Id.*

In this case, the bankruptcy court's judgment did not define the property as "property of the estate," but it granted the trustee the requisite authority for recovering the property pursuant to the code. Nullification is a necessary component to the judgment when the nullification of a transfer itself is a sufficient remedy for the loss suffered by the creditor. Epstein § 6–80, at 206. Here, nullification did not automatically change title to and possession of the land. Instead, the bankruptcy court's judgment nullifying the transfer was a judgment regarding the parties' rights as those affected by the fraudulent conveyance avoidance action.

The Schaefers further argue the satisfaction of judgment did not reconvey the property titles from the estate or the debtors back to G.R.D., and that the court of appeals erred in taking judicial notice of the date the satisfaction was filed. A satisfaction of judgment "operates as a complete discharge of the judgment debt and a total relinquishment of all rights to the judgment." 47 Am. Jur. 2d *Judgments* § 825, at 397 (2006). Thus, regardless of when the satisfaction was filed in this case, it memorialized the monetary recovery received by the trustee on behalf of the estate and it released his rights in the judgment granting him the right to recover the titles from G.R.D.[2] No title was conveyed or

---

[2]Although the Schaefers dispute the propriety of the court of appeals' decision to take judicial notice of the date the satisfaction of judgment was filed, this point does not affect the resolution of the case before us because the filing has only one legal consequence. Moreover, the Schaefers do not argue whether or how they were prejudiced by the court of appeals' decision to take judicial notice of the date of the filing of the Satisfaction of Judgment, which both parties presented at trial as evidence. As a result, we find the argument was waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

reconveyed by the filing. Instead, the titles remained with G.R.D. throughout the pendency of the bankruptcy case and continue to belong to G.R.D. today.

### IV. Conclusion.

We find the district court erred in its decision to quiet title to the real estate in favor of the Schaefers. We vacate the decision of the court of appeals, reverse the decision of the district court, and remand for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**