# IN THE COURT OF APPEALS OF IOWA

No. 13-1927
Filed December 24, 2014

**MARK LINSER, d/b/a H&R BLOCK,**
Plaintiff-Appellee,

**vs.**

**ARDENE A. CROSS,**
Defendant-Appellant,

**and**

**ELAINE LINSER,**
Third-Party Defendant-Appellee.
_____

Appeal from the Iowa District Court for Marshall County, Steven J. Oeth, Judge.

Defendant appeals the amount of damages awarded in a breach of contract action. **REVERSED AND REMANDED.**

Joel T.S. Greer of Cartwright, Druker & Ryden, Marshalltown, for appellant.

Bethany J. Currie of Peglow, O'Hare & See, P.L.C., Marshalltown, for appellees.

Heard by Vaitheswaran, P.J., Mullins, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MULLINS, J.**

The defendant Ardene Cross appeals the amount of damages awarded in a breach-of-contract action.[1] There could be no breach of the employment contract beyond the one-year term of the contract; and thus, no damages for future lost profits were recoverable by the plaintiff under this theory. Ardene is entitled to trial and appellate attorney fees for the breach of the sales contract. Furthermore, the district court erred in determining that Ardene was not entitled to additional compensation of $7302.09. The decision of the district court is reversed and remanded.

## I.      Background Facts & Proceedings

Ardene operated franchise offices of H & R Block (HRB) in Tama and Traer, Iowa. She had been preparing taxes since 1978, and in 2010 the HRB corporate office recommended she develop a five-year exit strategy. Elaine Linser, who had been preparing taxes since 1985, was the office manager of the HRB office in Marshalltown and was interested in purchasing an HRB franchise. Because Elaine was already working at the Marshalltown HRB office, the parties agreed Ardene would sell the Tama and Traer franchise offices to Elaine's husband, Mark Linser, as the franchisee. Mark had experience as a businessman, but no experience in tax preparation.

Ardene and Mark entered into a sales contract for the tax preparation practices in Tama and Traer for $225,000. The purchase price was allocated as:

---

[1]   On December 10, 2015, we filed an opinion in this case. Upon a petition by Ardene we granted rehearing and withdrew that opinion in order to correct a math error that appeared in the conclusion paragraph. This opinion corrects that error.

Tama real estate, $25,000; equipment and furniture, $5000; and the right to operate under the franchise license agreement, $195,000. Mark paid $15,000 as a down payment and was to pay $26,000 annually. Mark was responsible to pay property taxes and insurance on the Tama building. The contract was contingent upon approval by the HRB corporate office, and this approval was obtained on January 13, 2011. After the contract was approved Elaine began working at the Tama office.

The parties agreed Ardene would continue working at the Tama office as an employee and expected this would continue over a period of five years as part of Ardene's five-year exit strategy. Ardene and Mark entered into an Office Manager Employment Agreement, which provided Ardene would be employed at the HRB franchise offices in Tama and Traer from January 1 to December 31, 2011. Her compensation until April 18, 2011, was calculated as her tax preparation volume times ninety-three percent times thirty percent, with $500 per week to be a draw against her final compensation. For the remainder of the time, her compensation was $500 per week. The employment agreement provided that for two years following the cessation of her employment Ardene could not engage in the business of tax preparation within ten miles of Tama or Traer. She was also prohibited from soliciting clients. The contract provided Ardene could be terminated for misconduct, disobedience, or insubordination, among other things.

The district court found, "Almost immediately after the sales contract was signed and approved by all parties, the relationship between Ardene on one side

and Mark and Elaine on the other side began to deteriorate." Mark conducted a personnel review with Ardene on March 5, 2011. They discussed Mark's concern that Ardene started multiple tax returns, then left them open for a period of time. The Linsers had a policy that once a tax return was started it should be completed and the client billed for the work as quickly as possible. There were also concerns that sometimes Ardene would have two clients scheduled at the same time. The Linsers felt Ardene should be more open to sharing her clients with other tax preparers in the office. The personnel review stated, "Not cooperating in assisting us w/the above request can/may result in termination." Ardene refused to sign the review form and walked out of the meeting, stating she had an appointment with a client.

The Linsers terminated Ardene on April 11, 2011, because they believed she was continuing to operate her bookkeeping business from the HRB office, in violation of corporate rules. Ardene was paid $6340.61 after she was discharged. Mark testified that although he was not obligated to pay her a bonus, he voluntarily chose to include a bonus in her payment. Following her discharge, Ardene obtained employment at the Marengo HRB office, which was about forty miles away from the Tama office. Two hundred nine former clients from the Tama and Traer HRB offices followed Ardene to Marengo.

The Linsers paid the amount of $26,000 due under the sales contract for 2011, but made no further payments. They did not pay the property taxes for the Tama office. The Linsers moved the HRB office in Tama and were no longer using the building included in the sales contract with Ardene.

On January 17, 2012, Mark filed a lawsuit against Ardene, claiming she had breached the restrictive covenant in her employment contract. Ardene filed a counterclaim against Mark and included Elaine as a third-party defendant, asserting claims of unpaid wages, wrongful termination, defamation, and breach of the sales contract. Mark amended his petition to include claims of defamation, interference with a business relationship, and fraudulent misrepresentation. He sought damages and injunctive relief.

A bench trial on these various claims was commenced on August 27, 2013. The district court determined Mark had breached the sales contract by not making annual payments after 2011. The court determined Ardene's damages were $206,237, but reduced this amount by $25,000 (representing the value of the building, to which Ardene retained title). The court found Ardene breached the employment contract by being insubordinate. The court calculated Mark lost revenue of $17,310.65 each year for four years as a result of the breach, for a total of $69,242.60. The court found Mark made an error of ninety dollars in calculating Ardene's wages. The court denied the claims of breach of the restrictive covenant, defamation, fraudulent representation, and interference with a business relationship. The court denied Mark's request for an injunction. The parties were ordered to pay their own attorney fees. In total, Mark was ordered to pay a net judgment to Ardene of $112,084.51.

Both parties filed motions pursuant to Iowa Rule of Civil Procedure 1.904(2). The court amended its decision to order Mark to pay $2188 for property taxes, which he had been obligated to pay under the sales contract.

The court also decreased Ardene's award for breach of the sales agreement to $205,806.52. The net judgment against Mark was amended to $113,841.92. Mark appealed the district court decision, and Ardene cross-appealed. Mark later voluntarily dismissed his appeal, and Ardene's cross-appeal remains as the sole appeal.

## II.      Standard of Review

This action was tried at law and our review is for the correction of errors at law. *See* Iowa R. App. P. 6.907. "If substantial evidence in the record supports a district court's finding of fact, we are bound by its finding." *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110 (Iowa 2013). "However, a district court's conclusions of law or its application of legal principles do not bind us." *Id.*

## III.      Breach of Employment Contract

On appeal, Ardene does not dispute that she breached the employment contract by engaging in insubordination. Ardene claims expected future profits were an improper measure of damages as a matter of law. She asserts that her written employment contract was only for a period of one year, and states Mark was not entitled to lost profits for a period of four years after she was terminated.

In order to prove a breach of contract, a party must show: (1) the existence of a contract, (2) the terms and conditions of the contract, (3) it has performed all the terms and conditions required under the contract (4) the other party's breach of the contract in some particular way, and (5) the complaining party has suffered damages as a result of the breach. *Id.* at 111. "The first two

elements address the existence of a contract. The last two elements address the breach of the contract and the damages caused by the breach." *Id.*

In general, "when a contract has been breached the nonbreaching party is generally entitled to be placed in as good a position as he or she would have occupied had the contract been performed." *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 831 (Iowa 1998). The Iowa Supreme Court has stated:

> Distinct from the general rule for damages based on commitment of a tort, damages based on breach of a contract must have been foreseeable or have been contemplated by the parties when the parties entered into the agreement. Whether the damages were reasonably anticipated by the parties when the contract was formed may be discerned from "the language of the contract in light of the facts, including the nature and purpose of the contract and circumstances attending its execution." Damages which a reasonable person would expect to follow from breach of a contract are direct and thus should be awarded.

*Kuehl v. Freeman Bros. Agency, Inc.*, 521 N.W.2d 714, 718 (Iowa 1994) (citations omitted). "[D]amages recoverable for a breach of contract are limited to losses actually suffered by reason of the breach and must relate to the nature and purpose of the contract." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 847 (Iowa 2010).

The district court found:

> The Linsers were counting on Ardene being their employee for at least five years. This is consistent with Ardene's testimony that HRB corporate wanted a five-year exit plan in place. Ardene also acknowledged that she wanted to continue to do returns after selling the franchise. . . . The evidence established that the Linsers lost at least 209 clients as a result of having to terminate Ardene. That is, 209 clients have left the Tama-Toledo franchise and have followed Ardene to the Marengo HRB office. It is clear the parties expected those returns to be done in the Tama-Toledo office. The

lack of this revenue is clearly an element of damage suffered by the Linsers resulting from their justifiable termination of Ardene's employment contract.

The threshold question is whether the parties' expectations that Ardene would work in the Tama office for five years constituted an enforceable contract. Neither the sales contract nor the employment agreement reference five years. The express terms of the employment agreement limit it to one year. Even the restrictive covenant is only for a two-year term. There is no written document which memorializes any five-year obligation. Even if we were to agree that verbal expectations could form the basis of a contract, neither the verbal representations nor any other evidence establishes the terms and conditions of any purported contract.

Without a contract beyond the one-year term, there could be no breach beyond that time; and thus, no damages for future profits are recoverable by Mark under this theory. As the nonbreaching party, Mark is entitled to be placed in as good a position as he would have occupied had the contract been performed. *See Midland Mut. Life Ins. Co.*, 579 N.W.2d at 831. Here, the term of the employment contract was specifically for a period of one year. Mark is not entitled to damages for lost future profits for four years into the future. We reverse the decision of the district court determining Mark was entitled to damages of $69,242.60 due to Ardene's breach of the employment contract.

### III.  Attorney Fees

**A.**  Ardene claims she is entitled to trial attorney fees because Mark breached the sales contract. The district court determined Mark had breached

the sales contract and Ardene had breached the employment contract. The court determined Mark and Ardene were both entitled to attorney fees and these amounts offset each other, so neither party was awarded attorney fees. Ardene claims her breach of the employment contract should not trigger the attorney fee provision of the employment contract.

The employment contract contains this provision concerning remedies:

> The parties agree that if any provision of Section 8 [Confidential Information], 9 [Restrictive Covenants], or 10 [Nonsolicitation of Employees] is violated, the Company will have no adequate remedy at law and will suffer irreparable loss and damage. . . . Further, in the event of such breach or violation, Associate shall pay the Company all court costs, attorneys' fees, and expenses incurred by the Company in enforcing this Agreement.

"A written contract must contain an express provision regarding attorney fees and litigation expenses in order for a court to include attorney fees and litigation expenses in a favorable judgment." *NevadaCare, Inc. v. Iowa Dep't of Human Servs.*, 783 N.W.2d 459, 470 (Iowa 2010). "When a contract contains a clear and express provision regarding attorney fees, the court's award must be for reasonable attorney fees." *Id.* We will reverse a court's ruling awarding attorney fees only when the court abuses its discretion by resting its ruling on grounds that are clearly unreasonable or untenable. *Id.* at 469.

The provision concerning attorney fees in the employment contract applies only if an employee divulges confidential information, breaches the restrictive covenants by preparing tax returns within ten miles for a period of two years[2] or

---

[2] There is an exception to the two-year, ten-mile restrictive covenant for the preparation of tax returns at another HRB office.

solicits clients, or solicits HRB employees to work for a competitor within a one-year period. There are no findings in this case that Ardene engaged in any of these activities. Therefore, the attorney fee provision of the employment contract is not applicable in this case. The district court erred by finding Ardene was responsible for pay Mark's attorney fees associated with his claim of breach of the employment contract.

We remand to the district court for a determination of the attorney fees Mark should be required to pay Ardene based on his breach of the sales contract. The sales contract provides, "If buyer fails to timely perform this contract, seller may elect to declare the entire balance immediately due and payable after such notice and seller shall be entitled to any and all remedies, or action at law, including foreclosure, and the party at fault shall pay costs and attorney fees."

**B.** Ardene also seeks attorney fees and costs for this appeal. Under the sales contract, Ardene is entitled to receive reasonable appellate attorney fees. *See Foxley Cattle Co. v. Midwest Soya Int'l, Inc.*, 585 N.W.2d 231, 233 (Iowa 1998) (finding a contract provision permitting attorney fees includes appellate attorney fees). From the record on appeal, however, we are unable to determine a reasonable amount for appellate attorney fees. The issue is remanded to the district court for a determination of reasonable appellate attorney fees and costs. *See Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 111 (Iowa 2011).

**V.      Unpaid Wages**

**A.** Ardene claims she is entitled to unpaid wages under the Iowa Wage Act, Iowa Code chapter 91A (2011). She contends she was never paid for work she performed between March 31 and April 11, 2011. She states she continued to work during this period of time and under the formula in her employment contract she should have been paid $6954.39. She also claims she is entitled to liquidated damages of five percent. *See* Iowa Code § 91A.2(6).

The employment contract provided, "If Associate's employment is terminated pursuant to Section 6, Associate's compensation shall automatically cease." Ardene was terminated under section 6 and the district court determined she was not entitled to any further compensation, including a bonus, after she was terminated. The court concluded Mark had voluntarily paid Ardene a bonus when he paid her $6340.61, although he was not obligated to do so. The court found that because two numbers were transposed, "Mark owes Ardene $90.00 in order to accurately reflect the bonus Mark voluntarily chose to pay her."

When an employee is terminated, the employer must pay the employee all wages earned, less lawful deductions. Iowa Code § 91A.4. An employee's wages may be based upon time, task, piece, commission, or other basis of calculation. *Id.* § 91A.2(7)(a). A bonus may be included in the statutory definition of wages. *Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 585 (Iowa 2002).

The terminology used by the parties in this case is somewhat confusing because what they are referring to as a "bonus," is actually Ardene's compensation under the terms of the employment contract. A handwritten

notation, initialed by Elaine and Ardene, stated Ardene's "compensation is calculated as follows: tax volume x 93% x 30% with $500 weekly pay to be a draw against final compensation which ends 4/18/11 and will be paid on or before 5/16/11." A bonus paid to an employee may be considered wages, if the employer is contractually bound to pay it. *Dallenbach v. MAPCO Gas Prod., Inc.*, 459 N.W.2d 483, 488 (Iowa 1990). Under the terms of the employment contract Mark was contractually obligated to pay Ardene under the formula found in the contract.

Ardene presented an exhibit showing she had completed 509 tax returns. Of the 509 returns, 483 had been paid for, generating revenue of $69,598. Using the formula in the employment contract, Ardene's compensation for these 483 returns should be $19,417.84.[3] Ardene also calculated there were twenty-six returns for which HRB had not yet been compensated. She determined the average charge per return was $144.10.[4] She estimated the revenue from the twenty-six returns would be $3746.60. Ardene's compensation for these unpaid returns would be $1045.30.[5] Ardene's total compensation would then be $20,463 ($19,418 + $1045 = $20,463). During her time of employment Ardene was paid a total of $13,508.61. The amount she had not yet been paid was $6954.39. Mark did not object to Ardene's exhibit setting out these calculations.

---

[3] $69,598 x 93% = $64,726.14; $64,726.14 x 30% = $19,417.84.
[4] Ardene divided the revenue for the paid returns, $69,598, by 483, to arrive at $144.10 per return.
[5] $3746.60 x 93% = $3484.34; $3484 x 30% = $1045.30.

We conclude the district court erred in finding Ardene was not entitled to any additional wages. We conclude that under the specific terms of the parties' employment contract Mark is obligated to pay Ardene an additional $6954.39.

**B.** Ardene asserts she is entitled to liquidated damages of $347.70, which is five percent of $6954.39. Section 91A.8 provides:

> When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimburse, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary.

The liquidated damages provision in section 91A.8 applies to the intentional withholding of regular paychecks and commissions. *Runyon*, 653 N.W.2d at 588. It does not apply to a dispute over the calculation of a discretionary bonus. *Id.* Furthermore, it does not apply to an employer's inadvertent failure to pay an employee's full wages. *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 598 (Iowa 1999). Liquidated damages are calculated pursuant to section 91A.2(6).[6] *Id.*

The evidence shows the Linsers intentionally failed to pay Ardene the wages she was entitled to receive under the terms of the employment contract.

---

[6] In section 91A.2(6), five percent is multiplied by the amount of unpaid wages and that sum is then multiplied by the number days the wages were unpaid, "excluding Sundays, legal holidays, and the first seven days after the regular payday on which wages were not paid." The amount of liquidated damages, however, cannot exceed the amount of unpaid wages. Iowa Code § 91A.2(6); *Jackson v. City of Ottumwa*, 396 N.W.2d 794, 796 (Iowa Ct. App. 1986). In Ardene's appellate brief she requests liquidated damages of $347.70, and we conclude the amount of liquidated damages she receives cannot exceed that amount. *See Schaefer v. Schaefer*, 795 N.W.2d 494, 502 n.2 (Iowa 2011) (finding issue that was not argued on appeal was waived).

They arbitrarily decided not to pay her for any work after March 31, 2011, although she continued to work until she was terminated on April 11, 2011. We conclude Ardene is entitled to liquidated damages of $347.70. The total amount Ardene should receive in unpaid wages and liquidated damages is $7302.09 ($6954.39 + $347.70 = $7302.09).

## VI. Disposition

There could be no breach of the employment contract beyond the one-year term of the contract; and thus, the damages awarded to Mark for future lost profits in the amount of $69,242.60 is reversed. Ardene is entitled to trial and appellate attorney fees for breach of the sales contract. Furthermore, the district court erred in determining Ardene was not entitled to additional compensation of $7302.09. Thus, we rule the net judgment against Mark in favor of Ardene is in the amount of $190,386.61 ($113,841.92 + $69,242.60 + $7302.09). We remand to the district court for a determination of reasonable trial and appellate attorney fees and costs as provided by the terms of the sales contract.

**REVERSED AND REMANDED.**